

RECEIVED

AUG 19 2016

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

## MEMORANDUM

Including;

Table of Authorites,

Table of Contents,

Opening Introduction,

9 Grounds for Relief,

Relevent Facts/Issues and Arguments

EXHIBITS,

Sworn Affidavit

28

MEMORANDUM

TABLE OF AUTHORITIES

OPENING INTRODUCTION

9 GROUNDS FOR RELIEF

RELEVENT FACTS/ISSUES AND ARGUMENTS

TABLE OF AUTHORITIES

29

## TABLE OF AUTHORITIES

SIXTH AMENDMENT, UNITED STATES CONSTITUTION

Article III § 14,West Virginia State Constitution

United States V. William Merlino,LEXIS 757132015,U.S.Dist,Mass,(2015)

Strickland v. Washington,466 U.S.668,104 S.Ct.2052,80L.Ed.2d674 (1984)

Lafler V. Cooper,566 U.S.132 S.Ct.1376;182 L.Ed.2d398 (2012)

Missouri V. Frye,566 U.S.132 S.Ct.1399,1407-1408,182 L.Ed.2d379 (2012)

United States V. Rodriguez Rodriguez,929 F.2d 747,753,n.1(1991)

United States V.Gordon,156.F3d 376,380-381(1998)

United States V. Day,969 F.2d 39,43-45(1992)

Buckham V. Wainwright,639 F.2d 262,267(1981)

Julian V. Bartley,459 F.3d 487,498-500 (2007)

Wanatee V. Ault,259 F.3d 700,703-704(2001)

Nunes V. Mueller,350 F.3d 1045,1052-1053(2003)

Williams V. Jones,571 F.3d 1086,1094-1095(2009)

United states V. Morrison,449 U.S.361,365 (1981)


### West Virginia Authorities

State ex rel. Strogen V. trent,196 W.Va.148,469 S.E.2d 7 (1996)

State V. Watson,200 W.Va.201,488 S.E.2d 476 (1997)

State V. Miller,194 W.Va.6,459 S.E.2d 117 (1995)

Tucker V. Holland,174 W.Va.409,327 S.E.2d 388 (1985)

Marano V. Holland,179 W.Va.156,366 S.E.2d 177 (1988)

State V. Thomas,157 W.Va.640,203 S.E.2d 445 (1974)

State V. Jenkins,229 W.Va.415,729 S.E.2d 250(2012)

State V. Durham,156 W.Va.509,195 S.E.2d 144(1973)

State V. Roush,95 W.Va.132,120 S.E.304(1923)

State V. Lucas,103 W.Va.743,138 S.E.393 (1927)

State V. Craig,131 W.Va.714,51 S.E.2d 283 (1948)

30

## TABLE OF AUTHORITIES

The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution

Article III, § 5 of the United States Constitution.

U.S. v. Lerma, 657 F.2d 786, 789 (5th Cir. 1981) (Unit A) (citing cases). 22 Accord

U.S. v. Mack, 695 F.2d 820 (5th Cir. 1983);

U.S. v. Narciso, 446 F. Supp. 252, 282-83 (E.D. Mich. 1977).

Accord U.S. v. Mack, 695 F.2d 820 (5th Cir. 1983);

U.S. v. Narciso, 446 F. Supp. 252, 282-83 (E.D. Mich. 1977).

United States v. De La Rosa, 171 F.3d 215, 221 (5th Cir. 1999)

United States v. Lindell, 881 F.2d 1313, 1322 (5th Cir. 1989)

United States v. Shaw, 338 F. App'x 404, 408 (5th Cir. 2009)

States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985).

United States v. Cravero, 530 F.2d 666, 670 (5th Cir. 1976)

United States v. Williams, 49 Fed. Appx. 420, 424 (4th Cir. 2002).

Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002)

United States v. Kelly, 35 F.3d 929, 933 (4th Cir. 1994)

Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)).

United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987).

31

United States v. Kelly, 35 F.3d 929, 933 (4th Cir. 1994)

Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177, 3 L. Ed. 2d 1217 (1959

United States v. Agurs, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397, 49 L. Ed. 2d 342 (1976United States v. Agurs, 427 U.S. 97, 106, 96 S. Ct. at 2399

W. Va. Code § 61-2-1

W.Va. Trial Court Rule 42.02

State V. Jenkins 229 W. Va. 415; 729 SE2d 250729 S.E.2d 250; 2012

State v. Hottle, 197 W. Va. 529, 476 S.E.2d 200, 1996

State v. Giles, 183 W. Va. 237, 395 S.E.2d 481, 1990

State v. Walker, 188 W. Va. 661, 425 S.E.2d 616, 1992

32

## OPENING INTRODUCTION TO THE PRESENTATION OF THIS CASE

Comes now the Petitioner, Pro-Se, and moves this Honorable Court to Hear the Case presented in the body of a Petition for a Writ of Habeas Corpus.

The Petitioner herein has submitted a simular Petition on 8/14/15 and was Dismissed by the Honorable Judge Paul T. Farrell due to there NOT being a Direct Appeal Filed in relation to the Conviction(s) that were had for Burglary and 1St Degree Murder on Oct.18,2013 in The Cabell County Circuit Court of West Virginia.

Petitioner avers that there existed a very clear available source of remedies that are inconsistant with each other in the proper way to seek relief(s) for the conviction(s) had as afore mentioned.

Firstly there is the avenue of Relief that could be sought by the filing of claim(s) in a Direct Appeal to the West Virginia Supreme Court of Appeals, However, as has been identified by the Petitioner, The Honorable Justice, Franklin D. Cleckley has proffered in his writtings of the Handbook on WEST VIRGINIA CRIMINAL PROCEDURE, That; "**Ineffective Assistance of Counsel**" Should only be raised in a Petition for Writ of Habeas Corpus rather than in a Direct Appeal since "The allegations of inadequacy of investigation AND improper Trial Strategy are, We believe, **Better addressed in a Habeas Corpus Proceeding** where a Court would have the FULL benefit of an **evidentiary Hearing**".

33

Secondly there existed the avenue of a Petition for a Writ of Habeas Corpus in which appears to the Petitioner to be the appropriate procedure to seek relief(s) in regards to an Ineffective Assistance of Counsel claim, As is proffered by the most Honorable Justice, Franklin D. Cleckley as; "Claims of Ineffective Assistance of Counsel are primarily bottomed on the facts which **CAN NOT** be adequately determined from the Appeal record. These claims are more satifactorilly resolved through a Habeas Corpus proceeding, As many Jurisdictions have already recognized that, Appellate Review of an Ineffective Assistance of Counsel Claim is de novo".

Therefore, With the Petitioner being compelled Under a Doctrine of Waiver by Election of Remedies, The general Rule is; That when the choice is once actually made between inconsistant theories and Remedies, It operates as a bar, And the Suitor will **NOT** be allowed to invoke the aid of the Court upon contradictory principles of redress upon one, And the same line of acts, The Doctrine requires the party **CHOOSE ONE** Remedy over another, **KNOWINGLY**, "When a party has two (2) Remedies inconsistant with each other, ANY Decisive act by Him, done with knowledge of His rights and of the facts, Determines once for all His remedy".

A Waiver By Election's Rule applies when (3) Three elements do coincide: (a) Two (2) or more remedies **MUST** exist,(b) The available Remedies **MUST** be inconsistant,[AND](c) Choice of one(1) Remedy and it's pursuit to conclusion **MUST** be made.

34

Therefore, The Petitioner herein filed a WAIVER OF DIRECT APPEAL on 12/15/15 with the Cabell County Circuit Court's Clerk, and also forwarded a true copy of such to the West Virginia Supreme Court of Appeals, to be made a matter of "Record".

Petitioner further contends that as He seeks the Relief(s) as described herein this Petition, He is in belief that He has met the three (3) Requirements needed to establish the **NEED** for the Doctrine of Waiver By Election of Remedies as; (1) Two remedies are in existance to pursue the Ineffective Assistance of Counsel Claim, Either by a Direct Appeal, or secondly by a Petition for a Writ of Habeas Corpus,(2)The available Remedies are **INCONSISTANT**, As the West Virginia Supreme Court RECOMENDS thatn the Issue of Ineffective Assistance of Counsel be addressed in a Habeas Corpus,[AND] (3) The choice of one Remedy, [AND] It's persuit to **CONCLUSION MUST BE MADE**, as the Petitioner HAS chosen to seek Relief(s) in the Petition for Writ of Habeas Corpus and has entered a WAVER OF DIRECT APPEAL so as to properly proceed.

Petitioner avers that He has exercised His Right to Due Process in His WAIVER OF A DIRECT APPEAL, in accordance to the Doctrine Of Waiver By Election Of Remedies so as to present the ISSUE of Ineffective Assistance Of Counsel as was proffered by the most Honorable Justice, Franklin D. Cleckley in this Petition for a Writ of Habeas Corpus in seeking the Relief(s) for the Conviction(s) had for BOTH Burglary and First Degree Murder, and is Presented Respectfully, Pro-Se as Follows;

35

Petitioner then Filed a successive Petition on 12/2/2016, which has been declared to be "SUSPENDED" indefinitely by Judge Paul T. Farrell and by such suspension there exists a potential Time tolling issue against the Petitioners 1 year statute of limitations pursuant to the AEDPA standards, and in furtherance, Petitioner was advised by Counsel that there was a possibility of the time tolling being intentional so as to cause the Petitioner the denial of filing for relief in a Federal Court in challenging the Conviction(s) which were had within Judge Paul T. Farrell's Court on 10/18/2013.

Petitioner has attempted to file a Writ of Mandamus on 8/5/2016, to compel Judge Paul T. Farrell to NOT suspend the right of the Habeas Corpus and to either allow the proceedings to be had without delay or to recuse himself from hearing the Case, OR to show cause why the Petition for Writ of Habeas Corpus has been SUSPENDED and delayed, which was determined by a West Virginia Supreme Clerk to be forbidden and successive, in which it is not, offered herein as **[EXHIBIT MANDAMUS].**

Petitioner then presented to this Honorable Court a Motion for Stay and Abeyance in order to preserve the Issues and Grounds presented at the initial State Habeas Corpus and was ORDERED on 8/4/2016 to file a 2254 Petition setting forth the grounds for relief by 9/5/2016, an pursuant to said ORDER the Petitioner presents the following;

B-9

36

GROUNDS FOR RELIEF

## GROUND(s) OF THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

1). The failure of defense Counsel to conduct **ANY** Investigation(s), or to call **ANY** Witnesses, or to introduce **ANY** evidence Whatsoever to corroberate Defendent's testimony of the underlying events that ultimately led to Defendant's conviction of **BOTH** Burgalry and for First Degree Murder resulting from a single criminal act, occerance, episode or transaction, Constituting the **"Ineffective Assistance of Counsel"** which failure was **BOTH** inadequate and such inadequacy had prejudiced the outcome of this Case.

2). Defense Counsel's failure to understand the Law set forth in the Court's So-Called **"Jenkins Charge"** to the Jury, and Counsel's failure to explain that precedent to the Defendant when He decided to reject the State's Plea Offer, was very prejudicial to this case and Constitutes the **"Ineffective Assistance Of Counsel"** In Violation of the **Sixth Amendment** to the United States Constitution and Article III, § 14 of The **West Virginia State Constitution.**

3). **Defense Counsel's** offering Expert Testimony in Defense of his very apparent mistake in Law that was a result of the Convictions in this case as to **1St Degree Murder** and **Burglary.**

3)

4). Defense Counsel's FAILURE and REFUSAL to conduct a meaningfull investigation into the Petitioner's extensive history of mental and psychological disorders, and in refusing to Motion the Court for a psychological evaluation after being made aware of previous history of psychological disoreders and a suicide attempt while awaiting Trial.

5). Failure by Defense Counsel to Object to the State's knowing use of perjured testimony and the presentment of such by prosecutor Chris Chiles while aware that such testimony was in fact perjured, false, fabricated and fraudulent and IMPOSSIBLE according to all relevent Medical reports, Police Reports, Autopsy Reports, Paramedic Reports that were in possession of BOTH, the State's prosecutor and the Appointed Defense Counsel PRIOR to and during Trial.

---

OTHER GROUNDS INCLUDED AS:

6). The State's Knowing Use of Perjured Testimony, where the State's Prosecutor, Chris Chiles did knowingly and intentionally present the false, fabricated, perjured testimony of a State's Witness to the Court and its Juror's so as to cause an intentional prejudicial impact on the Juror's decision and verdict and determination of guilt.

7). Court's Abuse of Discretion by not proclaiming and initiating a Doctrine of Inherent Incredibility and limit the perjured testimony being presented by the State's Witness, while the Court was aware that the events were physically impossible in the description of the injuries inflicted upon the victim, and also allowed the prosecution to lead the perjured testimony while being aware that such was false,perjured aND IMPOSSIBLE as Medical Records clearly established.

36

**8).** Prosecutorial Misconduct and a Denial of fundamental fairness by the State's knowing use of Perjured testimony and offering such intentionally.

**9).** Double Jeopardy, by Convicting the Petitioner for BOTH 1st Degree Murder and Burglary under a Felony Murder theory and in not presenting instructions that distinguish between 1st Degree Murder and Felony Murder.

_____

The Petitioner herein offers the following in support to the aforementioned GROUNDS for which he seeks Relief.

39

RELEVENT FACTS ISSUES AND ARGUMENTS

410

The Sixth Amendment to the United states Constitution and Article
III, § 14 of The West Virginia State Constitution, assure not only
the Assistance of Counsel in a Criminal Proceeding, but these
Constitutional provisions mandate "competent and effective assistance
of counsel";State ex rel.Strogen v. Trent196,W.Va.148,469 S.E.2d 7(1996),


In order to prevail on an ineffective assistance claim, the Petitioner
MUST establish a two prong test, adopted and announced by the United
States Supreme Court in Strickland v. Washington,466 U.S. 668,104 S.Ct.
2052,80 L.Ed.2d 674(1984) As follows;
1). Counsel's Performance was deficient under an objective standard
of reasonableness; And,
2). There is a reasonable probability that, but for Counsel's
unprofessional errors, the result of the proceedings would have been
different.
Lafler v. Cooper,566 U.S.132 S.Ct.1376;182 L.Ed.2d 398(2012),In the
referencing of Strickland, Supra. See also, Missouri v. Frye,566 U.S.
132 S.Ct.1399,1407-08,182 L.Ed.2d 379(2012), State v. Miller,194,W.Va.
6,459 S.E. 2d117(1995); Tucker v. Holland,174,W.Va.409,327 S.E.2d388
(1985); Marano v. Holland,179,W.Va.156,366 S.E.2d117 (1988) ; State
of West Virginia v. Thomas, 157W.Va.640,203 S.E.2d 445(1974).


In making this determination, the Court MUST apply an "objective
standard", that standard requires an analysis of the FACTS and
circumstances in the Trial below, including a determination of whether
the "act's or omission's" were outside the broad range of professionally
competent assistance while at the same time refraining from engaging
in Hindsight or second guessing of Trial Counsel;s strategic decisions".

LJ(

**State v. Miller,194 W.Va.6,459 S.E.2d 117(1995)** ; **Lafler v. Cooper, 566 U.S. 132S.Ct.1376;182 L.Ed.2d 398(2012)** ; **State ex rel.Strogen V. trent,196 W.Va.148,469 S.E. 2d 7(1996)** ; **State v. Watson,200 W.Va. 201,488 S.E. 2d 476(1997),** The ultimate inquiry, then,is whether a "reasonable Lawyer" would have acted in a similar manner under the circumstances at issue.

This Court has consistantly HELD that this determination **MUST** be "highly Deferential and Prohibiting intensive scrutiny of Counsel and rigid requirements for acceptable assistance", **State v. Miller, 194 W.Va. 6,459 S.E. 2d 117(1995),** Citing **Strickland v. Washington, 466 U.S.668,104 S.Ct.2052,80 L Ed.2d 674(1984);** And, one"key Fulcrum" to this analysis is Defense Counsel's "Investigation of the case, which would enable him to make informed decisions about how best to represent criminal client's".

The latest Decision regarding **Lafler v. Cooper** And **Missouri v. Frye,** Claims of "ineffective Assistance of Counsel in relation to plea agreements was HAD on June 11, 2015, **United States Of America V. William Merlino, United States District Court For the District Of Massachusetts,2015 U.S. Dist. Lexis757132015, Criminal Action No. 99-10098,** Filed and Decided June 11,2015, As it was HELD; A Defendant **MUST** show that, but for the Ineffective Advice of Counsel there is a reasonable probability that the plea offer would have been presented to the Court (i.e., That the defendant would have accepted the plea, and the Prosecution would not have withdrawn in light of the intervening circumstances), That the Court would have accepted it's terms, and that the conviction or sentence, or **BOTH** under the offers terms would have been less severe than under the Judgement and Sentence that in fact were imposed.

And further HELD IN **United States Of America V. William Merlino;**
The Court **AFFIRMED** the Sixth Circuit's ORDER of Specific Performance
of the original Plea Agreement. Since the goal of a remedy is to
"Neutralize the taint' of a Constitutional Violation".


**State ex rel. Strogen v. trent,196 W.Va.148,469 S.E.2d 7(1996)** ;
Justice Scalia with whom Justice Thomas joins, and with whom the
Chief Justice joins to all but part IV, Dissenting," If a Plea Bargain
has been offered, a defendant has a **right** to effective assistance
of counsel in considering whether to accept it" " If that **right** is
denied", Prejudice can be shown if loss of the Plea opportunity led
to a Trial resulting in a conviction on more serious charges OR the
imposition of a more severe sentence" Ante, at 9, **Lafler v. Cooper,**
**566 U.S.132 S.Ct.1376;182 L.Ed.2d 398 (2012).**


In this Case it has been established that the State **"Ambushed"**
Defense Counsel with the So-called "Jenkins Charge" and the Court
allowed the instruction after the Deadline set, and all testimony
was had.


## THE "JENKINS" INSTRUCTION

The evidence in this case established that someone allegedly beat
the victim and that He required surgery to adress injuries, During
a second surgery approxamately 9 days after the alleged beating incident
the victim suffered a Cardiac Arrest and went into a coma, never
recovering from surgery, His family "PULLED THE PLUG" on Life Support
and the victim died thereafter.

43

At Trial the Court delivered the following So-Called "Jenkins Charge" Instruction to the jury:

The Court instructs the Jury that to be GUILTY of murder, it is **NOT** necessary that the wounds be the **DIRECT** cause of Death, It is sufficient if the initial wound or wounds caused Death indirectly through a chain of natural causes, The criminal responsibility is not lessened by the Pre-existing physical condition of the person killed, it is also inmaterial that the accused did not know that the victim was in a feeble condition which facillitated such killing.

**State of West Virginia v. Jenkins,229 W.Va.415, 729 S.E. 2d 250(2012); State V. Durham,156 W.Va.509,195 S.E. 2d 144 (1973) ; State V. Roush, 95 W.Va.132,120 S.E.304(1923) ; State V. Lucas,103 W.Va.743,138 S.E. 393(1927) ; State V. Craig,131 W.Va.714,51 S.E.2d 283(1948),** This instruction was based on CASE Law that has existed for **OVER** 75 years in West Virginia, It is well settled **"Black Letter Law"**, Yet the Defense was unaware that such Law existed and did not explain it to the Defendant when the State's Plea Offer was pending.

Moreover, Defense Counsel admitted to the Court that He was surprised by the Instruction, That He DID **NOT** explain the Law to the Defendant and that His Strategy was "OBLIVIATED" by the ERROR.

On that point, Defense Counsel told the Court:

" I have since been provided with a copy of that Case, I have read it, I have studied it, I have studied it's predecessor, The **Durham** Case, and  IF that had been presented to me the week **BEFORE** Trial, as required by your Honor, **Then CERTAINLY I would have consulted with Mr. Dreyfuse accordingly, And it may have made a difference, In NOT only His strategy**

44

13

But also in His desire to take the state's Offer, IT's VERY-Judge, I can NOT overstate the FORCE of that Jenkins Charge and the effect it had on, I'm sure it had on the Jury, and also Mr.Chiles was able to very, very effectively argue that in his closing and was able to mold his examination of His witnesses, His Medical Experts as well as His cross Examination of **OUR** Expert around the **FACTS** of the Jenkins Case and the instruction it produced".[emphasis].

**SEE JENKINS TESTIMONY IN SUPPORTING TRANSCRIPTS**
** MARKED AS EXHIBIT FLASH***

The Affidavit from Mr.Dreyfuse confirms what Defense Counsel told the court at the Post-Trial Hearing Motion. Specifically, It confirms that Mr.Dreyfuse was **NOT AWARE** of the Legal significance of the "Jenkins" instruction OR the existance of the "**Black Letter Law**" that supported the instruction, either before He rejected the State's Plea Offer of 30 Years **FLAT** for a No Contest Plea to 2nd Degree Murder and in return the State woud **DISMISS** Burglary and NOT seek a recividist, OR at the time the Court **GRANTED** the State's Jenkins instruction, Following trial.

Indeed, As evidenced by Mr. Dreyfuse's Affidavit, He was under the distinct impression from his Defense Counsel that the State had to show that the victim died DIRECTLY as a result of injuries that He inflicted, Which most definately DID **NOT** include a Heart Attack 9 days after the initial event. That was the ENTIRE basis of his Murder defense and Strategy, assuming the Jury did NOT accept His uncorroberated testimony that He was beaten, and Robbed by two of the State's witnesses that testified against Him, A total of (16) sixteen Potential witnesses for Mr. Dreyfuse's defense were NEVER

14

4/5

Interviewed, Investigated OR called to Trial by subpoena to corroberate Mr. Dreyfuse's testimony and to facts that exonerated Him, *NOT (1) ONE WAS EVER CALLED*

Importantly, When the Court accepted the state's Jenkins Charge, Mr. dreyfuse did NOT have the optionof accepting the State's Plea Offer, which had been withdrawn when the Trial began.

According to Mr. Dreyfuse's Sworn Statement, If His Defense Counsel had adequately informed him of the **LAW** reflected in the Jenkins instruction, Then He would have SURELY accepted the State's Plea Offer, If that would have occured, He would have faced a **(30) Thirty** year determinate Sentence, That the State was **WILLING** to accept, Instead of a Life without Mercy and a consecutive 1 to 15 years Prison Sentence on the underlying Burglary, FOR GOOD MEASURE.....

In addition to the Jenkins ISSUE, Defense Counsel failed to investigate or to otherwise introduce ANY evidence to support Defendant's Trial testimony, Such evidence existed in state's witnesses recorded interviews with Detective(s), and also per Defendant, Who simply conceded on cross examination that His Defense had NO corroberating evidence, OR witnesses, Which Mr. Chiles Prejudicially TITLED the testimony of Mr.Dreyfuse-"A FAIRY TALE"-A Story NOT supported by ANY evidence or a **SINGLE** Defense Witness...

For example, Defendant testified that He called an old Girlfriend, Karen Johnson, who resided in Parkersburg West Virginia, and that they were re-kindling an old flame, The defendant also told Ms. Johnson His accounts of the events that was consistant with his Trial testimony that He was a victim of a Brutal beating, stabbing and Robbery, and NOT a perpartrator of the same, And that Ms. Johnson

4/6

Seen ALL of the SEVERE bruising from his being beaten with a ball bat, and that she also helped treat the (2) two stab wounds and recomended that Mr. dreyfuse seek Medical treatment, And further testimony established that Mr. Dreyfuse was residing with Ms. JOhnson while he was seeking employment, Mr.Dreyfuse also testified that He interviewed for employment at Penzoil and AIRtight Bail Bonds BOTH located on 7th Street in Parkersburg among many other places while rekindling His relationship with Ms. Johnson.

Mr. Dreyfuse testified that a friend, Duane Cooners traveled from Parkersburg to Huntington in order to take Mr. dreyfuse back to Parkersburg and Ms. johnson, And that He told Mr. conners the exact same accounts of the events, and that His friend was also very concerned with Mr. dreyfuse's Medical condition, Dfense Counsel NEVER attempted to contact, interview or subpeona EITHER, Ms. Johnson OR Mr. Conners.

**Mr. Dreyfuse** also testified that He told Sgt.Allen, of the Wood County Sherrif's Office that He was surprized to be arrested because He was a victim in a Beating, Stabbing and Robbery, NOT the other way around, and also showed Sgt. Allen the Bruises and stab wounds suffered from His being robbed and attacked, Mr. Dreyfuse's Counsel did NOT subpoena Sgt. Allen **EITHER.** Moreover, Defense Counsel did **NOT cross-examine** Deputy Swiger, The other Officer involved in the aprehension of Mr. Dreyfuse in Parkersburg about His CRUCIAL corroberating evidence, even though He WAS available at Trial, albeit by a State issued subpoena.

47

16

Defense Counsel apparently did **NOT** investigate or interview the Clerk at Go-Mart, and He definately did **NOT** subpoena Him even though Mr. dreyfuse encountered Him imediately after the attack!, in a beaten, bloody, Stabbed condition at which time He told the Clerk the **DETAILS** of His being a victim of a Robbery, NOR did Defense Counsel subpoena the **VIDEO** from Go-Mart which would have SHOWN that Mr. Dreyfuse was in a Beaten, Bloody, Stabbed condition, which would have been wholly INCONSISTANT with the accounts of ALL the state's witnesses.

Defense Counsel did **NOT** investigate, interview or subpoena Mr. Dreyfuse's Room mate/LandLord, Who Mr. Dreyfuse testified had helped Him undress and treated the wounds incurred during His being Robbed, beaten and Stabbed, and also told Mr. Martin the exact same accounts of the events as to how He was set up to be robbed, being attacked and of His narrowly escaping and running to Go-mart, (3) three houses away from where the attack and robbery happened so that He was in the LIGHT and in PUBLIC, SAFE, and STAYED there for at least (10) **TEN Minutes** to insure that He was not being further persued by His attackers, Defense Counsel also did **NOT** subpoena **VIDEO** from the security Dept. at the Apartment complex, which also would have shown Mr. Dreyfuse in a Beaten, Bloody, stabbed condition from at least (8) eight different VIDEO camera's throughout the complex that would have recorded the entry and travel from the entrance, elevator, Hall ways, and even the process of Mr. dreyfuse gaining security clearence to the main lobby's entrance ina hoorid condition, along with the TIMESTAMPS of the VIDEO to corroberate the time that passed from

L/8

17

the NON investigated or subpoena'd Go-Mart Video in comparison to the Non investigated or subpoena'd apartment Video that would corroberate the passing of (10) **TEN MINUTES**, timestamp from go-Mart would also establish Mr. dreyfuse's being at Go-Mart for at least (10) TEN MINUTES and would have also been a reference of where Mr. dreyfuse was or had BEEN when the call to 911 was actually made, and would have corroberated Mr. dreyfuse's testimony of such events which would have been wholly INCONSISTANT with the accounts of all the State's witnesses.

Defense Counsel also allowed the state's witnesses to be led around relentlessly by the Prosecutor, It got so bad that the court chimed in several times, admonishing the Prosecution to "STOP LEADING", thus the State's case was at times "Manufactured" soley on leading questions and Defense Counsel essentially allowed the Prosecutor to build His case and to rehabilitate ANY wayward testimony through the use of leading questions with NO OBJECTIONS being made to such by Defense Counsel.

Defense Counsel's FAILURE to understand the Jenkins Law, Allowing the Prosecution to lead the witnesses and the failure to investigate the factual basis of Mr. Dreyfuse's defense, As well as Defense Counsel's failure to subpoena ANY witnesses, OR otherwise offer **ANY** evidence to corroberate Defendant's version of the underlying events cemented Mr. Dreyfuse's Convictions for Burglary and 1St Degree Murder.

18

49

Standing alone, Mr. Dreyfuse was litterally a sitting Duck in a Pond within feet of a Duck Blind occupied by a Particularly well-armed and capable Hunter, He didn't have a Sporting Chance.


If defense Counsel would have properly investigated the Defense of this claim, and offered evidence to corroberate Mr. Dreyfuse's testimony this evidence would have CERTAINLY cast reasonable doubt on the version painted by the Prosecutor's "leading testimony" of the State's lay witnesses, This is not 20/20 Hindsight or Monday Morning quarter backing, Nor is it the spinning of a "fairy Tale", It is a fundamental breakdown in a mans Constitutional Right to Competent Counsel. Compounding matters is the FACT that Defense Counsel BUILT their ENTIRE defense around a **MISTAKE IN LAW;** That is, They thought a Murder Conviction could NOT stand if the victim did NOT die as a result of injuries inflicted by being beaten.

Even the State's Doctor's admitted that the victim DID NOT die as a direct result of injuries inflicted by an assault, it is clear from the record that He died AFTER he suffered a Heart Attack during an Orthopedic procedure.

Defense Counsel's strategy was built around an OBVIOUS mistake in Law, and in NOT advising the Defendant of the "Black Letter Law" existing for well **OVER** 75 years, "That to be guilty of murder, it is not necessary that the wounds be the direct cause of death" resulted in Mr. Dreyfuse's refusal of the State's Plea Offer, and constitutes Ineffective Assistance of Counsel arising out of the Plea Negotiation process; Here the ineffective assistance led not to an Offer's acceptance but to it's rejection, having to stand trial, not choosing to waive it, is the prejudice alleged.

5D

In these circumstances a Defendant **MUST** show that but for the ineffective advice of Counsel there is a reasonable probability that the Plea Offer would have been presented to the Court,(i.e., That the defendant would have accepted the Plea and the Prosecution would not have withdrawn in light of intervening circumstances), That the Court would have accepted it's terms, and that the conviction or sentence, or BOTH, under the Offers terms would have been less severe than under the Judgement and sentence that in fact were imposed. <u>Lafler V. Cooper,566 U.S.132 S.Ct.1376;182 L.Ed.2d.398(2012)</u>; And further states, Here the Court of Appeals for the Sixth Circuit agreed with that test for <u>Strickland</u> prejudice in the context of a rejected Plea Bargain, This is consistant with the test adopted and applied by other Appellate Courts without demonstrated difficulties or systemic disruptions, <u>United States V. Rodriguez Rodriguez,929 F.2d 747,753,(1991)</u>, (per Curiam); <u>United states V. Gordon,156 F.3d 376,380-381(1998)</u> ; <u>United States V. Day,969 F.2d39,43-45(1992)</u>; <u>Beckham V. Wainwright, 639 F.2d 262,267(1981)</u>; <u>Julian V. Bartley,495 F.3d 487,489-500(2007)</u>; <u>Wanatee V. Ault,259 F.3d 700,703-704(2001)</u>; <u>Nunes V. Mueller,350 F. 3d 1054,1052-1053(2003)</u>; <u>Williams V. Jones,571 F.3d 1086,1094-1095(2009)</u>, The Strickland prejudice test requires a Defendant a reasonable possibility that the outcome would have been different with competent advice.

Where a defendant shows ineffective assistance has caused the rejection of a Plea leading to a more severe sentence at Trial, the remedy **MUST** "neutralize the Taint' of a Constitutional Violation, <u>United States V. Morrison,449 U.S.361,365.</u>

—  ——

5 1

## CONCLUSION

For the foregoing reasons, Defendant Respectfully Submitts that He has established that His defense Counsel's performance was Deficient under an objective standard of reasonableness, and that there is a reasonable probability that, but for Counsel's unprofessional error's the results of the proceedings would have been different.

Insofar as the Ineffective Assistance of counsel was indeed outcome Determinitive, And Violate the defendant's Constitutional Rights Under the **Sixth Amendment of The United states constitution**, And **Article III § 14 Of The West Virginia state Constitution**, This Matter should be REMANDED and the Conviction(s) REVERSED and a New trial should be GRANTED.

## RELIEF(s) SOUGHT

Petitioner's Conviction(s) for Burglary and 1St Degree Murder Should Be VACATED and the Case Should Be REMANDED to the Cabell County Circuit Court for the Specific Performance of the State's Original Plea Offer, as to Neutralize the Taint' of the Constitutional Violations, AND that this Honorable Court REMAND this MATTER with Instructions for a New Trial should the state's Offer be REFUSED by the Petitoner and He Chooses to go back to Trial.

Petitoner contends that this case is Ripe for an Omnibus Discovery Hearing so as to Establish the Record, and Requests that such be ORDERED by this Court so as to seek Appropriate Relief(s).

52

**INEFFECTIVE ASSISTANCE OF COUNSEL**

**FAILURE AND REFUSAL TO MOTION COURT FOR PSYCHIATRIC EVALUATION;**

Counsel  REFUSED to investigate the history of the Petitioners mental health and psychological disorders which were obvious by record and evidenced with previous attempted suicides and other serious psychological disorders that were relevant to the Petitioner/ Defendant's competency, and furthermore Counsel REFUSED to Motion the Court for a Psychological Evaluation of the Petitioner/Defendant after being made aware of a life long history of serious mental and psychological problems as offered in **[EXHIBIT-MENTAL HISTORY],** including a suicide attempt while awaiting Trial.

**W. Va. Code § 27-6A-1(a)** provides for only two methods of conducting a mental examination to determine a defendant's competency: **(1)** an examination by one or more psychiatrists or **(2)** an examination by a psychiatrist and a psychologist. The Supreme Court of Appeals of West Virginia has previously considered the requirements of this statute and held: In the interests of future judicial economy, whenever a trial court is confronted with a Motion for Mental Status Evaluation and orders an examination believing that the defendant may be incompetent or insane, the court should order that said examination shall be conducted by one or more psychiatrists, or a psychologist and a psychiatrist, in accordance with **W. Va. Code, 27-6A-1.**

A defendant has both a substantive and a procedural due process right to avoid being tried while mentally incompetent. In order to bring a successful substantive competency claim, a defendant must prove that he or she was, in fact, incompetent at trial.

In a procedural due process claim based on incompetence, a defendant need only demonstrate that he or she was denied an adequate procedure for determining mental competency after the trial court was presented with evidence sufficient to prompt good faith doubt regarding incompetency.

*53*

Since the right not to be tried while mentally incompetent is subject to neither waiver nor forfeiture, a trial court is not relieved of its obligation to provide procedures sufficient to protect against the trial of an incompetent defendant merely because no formal request for such has been put forward by the parties. In other words, a trial court has an affirmative duty to employ adequate procedures for determining competency once the issue has come to the attention of the court, whether through formal motion by one of the parties or as a result of information that becomes available in the course of criminal proceedings.

Competency to Stand Trial, Evidence of irrational behavior, a history of mental illness or behavioral abnormalities, previous confinement for mental disturbance, demeanor before the trial judge, psychiatric and lay testimony bearing on the issue of competency, and documented proof of mental disturbance are all factors which a trial judge may consider in the proper exercise of his or her discretion to order an inquiry into the mental competence of a criminal defendant.

**W. Va. Code § 27-6A-1(a)** permits a magistrate or judge to order a psychiatric evaluation whenever there is sufficient cause to believe that a defendant is either incompetent to stand trial or not criminally responsible for the charged offense due to mental illness, mental retardation, or addiction. Significantly, the statute sanctions such recourse at any stage of the proceedings after the return of an indictment or the issuance of a warrant or summons against the defendant.

Competency to Stand Trial Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a chance that would render the accused unable to meet the standards of competence to stand trial.

54

Thus, the fact that a defendant has been afforded a mental status evaluation and later been found competent to stand trial following an adversarial hearing does not relieve a trial court of its responsibility to remain watchful and vigilant as to the possibility that the defendant may lapse into incompetency during the course of subsequent proceedings.

Competency to Stand Trial Because a trial court is able to observe the demeanor of the defendant and consequently has a better vantage point than the appellate court to make determinations regarding mental competency, the appellate court will disturb a lower court's ruling denying a psychiatric examination and related proceedings only where there has been an abuse of discretion.

Pretrial Motions > Competency to Stand Trial When a trial judge is made aware of a possible problem with defendant's competency, it is abuse of discretion to deny a motion for psychiatric evaluation.

In order to demonstrate that a trial court abused its discretion in refusing to afford a defendant additional competency proceedings, the defendant must show facts such that a reasonable trial judge should experience doubt about the accused's continued competency to stand trial.

A court may conclude that a motion for mental examination under **W. Va. Code § 27-6A-1(a)** is not warranted based upon the fact that there is insufficient evidence to indicate that the defendant is incompetent. If this is done, the court should state its findings on the record. **W. Va. R. Crim. P. 12(e).**

When a trial judge is made aware of a possible problem with defendant's competency, it is abuse of discretion to deny a motion for psychiatric examination.

53

A judge may be made aware of a possible problem with defendant's competency by such factors as: a lawyer's representation concerning the competence of his client; a history of mental illness or behavioral abnormalities; previous confinement for mental disturbance; documented proof of mental disturbance; evidence of irrational behavior; demeanor observed by the judge; and, psychiatric and lay testimony about competency.

"When a trial judge is made aware of a possible problem with defendant's competency, it is abuse of discretion to deny a motion for psychiatric examination. To the extent **State v. Arnold**, 159 W. Va. 158, 219 S.E.2d 922 (1975), differs from this rule, it is overruled." In reaching this conclusion, we stated:

"A judge may be made aware of a possible problem with defendant's competency by such factors as:

a lawyer's representation concerning the competence of his client;

a history of mental illness or behavioral abnormalities; previous confinement for mental disturbance; documented proof of mental disturbance; evidence of irrational behavior; demeanor observed by the judge; and, psychiatric and lay testimony about competency**.**

 **State v. Arnold**, supra 219 {318 S.E.2d 608} S.E.2d at 926, citing**: Drope v. Missouri**, 420 U.S. 162, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975**); Pate v. Robinson,** 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). These factors are restated in **State v. Milam**, 159 W. Va. 691, 226 S.E.2d 433 (1976)." W. Va. at n.9, 270 S.E.2d at 656, n.9.We believe, as we indicated in Echard, that genuine attempts at suicide constitute evidence of irrational behavior.  When these acts are brought to the attention of a trial judge, he should order a psychiatric examination of a defendant.  Under the circumstances of this case, the trial judge abused his discretion in failing to order a psychiatric examination of the defendant.

56

When a trial judge is made aware of a possible problem with defendant's competency, it is abuse of discretion to deny a motion for psychiatric evaluation." Syl. pt. 4, in part, **State v. Demastus**, 165 W. Va. 572, 270 S.E.2d 649 (1980).

Genuine attempts at suicide constitute evidence of irrational behavior. When these acts are brought to the attention of a trial judge, he should order a psychiatric examination of a defendant." Syl. pt. 2, **State v. Watson**, W. Va, 318 S.E.2d 603 (1984). The test for mental competency to stand trial and the test for mental competency to plead guilty are the same." Syl. pt. 2, **State v. Cheshire**, 170 W. Va. 217, 292 S.E.2d 628 (1982).

It is a fundamental guaranty of due process that a defendant cannot be tried or convicted for a crime while he or she is mentally incompetent." **State v. Cheshire**, 170 W. Va. 217, 219, 292 S.E.2d 628, 630 (1982).Competency evaluations should be ordered to be performed by one or more psychiatrists or a psychologist and a psychiatrist, in accordance with **W. Va. Code § 27-6A-1.**

This Court has long since recognized that "an accused person, although he may have been sane at the time of the acts charged, cannot be tried, sentenced or punished while mentally incapacitated." Syllabus Point 1, **State v. Arnold**, 159 W. Va. 158, 219 S.E.2d 922 (1975), overruled on other grounds by **State v. Demastus**, 165 W. Va. 572, 270 S.E.2d 649 (1980). In fact, "'it is a fundamental guaranty of due process that a defendant cannot be tried or convicted for a crime while he or she is mentally incompetent.' **State v. Cheshire,** 170 W. Va. 217, 219, 292 S.E.2d 628, 630 (1982)." syllabus point 5, **State v. Hatfield**, 186 W. Va. 507, 413 S.E.2d 162 (1991).

57

Moreover, "No person may be subjected to trial on a criminal charge when, by virtue of mental incapacity, the person is unable to consult with his attorney and to assist in the preparation of his defense with a reasonable degree of rational understanding of the nature and object of the proceedings against him." Syllabus Point 1, **State v. Milam,** 159 W. Va. 691, 226 S.E.2d 433 (1976). Syllabus Point 6, State v. Barrow, 178 W. Va. 406, 359 S.E.2d 844 (1987).

Accordingly, this Court has stated that "a trial court has an affirmative duty to employ adequate procedures for determining competency once the issue has come to the attention of the court, whether through formal motion by one of the parties or as a result of information that becomes available in the course of criminal proceedings." **State v. Sanders,** 209 W. Va. 367, 377, 549 S.E.2d 40, 50 (2001).

Furthermore, this Court has held that "when a trial judge is made aware of a possible problem with defendant's competency, it is abuse of discretion to deny a motion for psychiatric evaluation." Syllabus Point 4, in part, **State v. Demastus**, 165 W. Va. 572, 270 S.E.2d 649 (1980).

Due to the profound importance of assuring that criminal defendants are not denied their due process rights by being subjected to trial, conviction or sentencing when they do not possess the requisite mental competence, when a trial judge orders a competency examination under **W. Va. Code § 27-6A-1(a)**, but the examination is not undertaken in the manner required by that statute, the court must grant a subsequent motion for a competency evaluation made by the defendant and order any such examinations as are necessary to comport with **§ 27-6A-1(a).**

Whenever a court of record, or in the instance of a defendant charged with public intoxication a magistrate or other judicial officer, believes that a defendant in a felony case . . . . may be incompetent to stand trial or is not criminally responsible by reason of mental illness, mental retardation or addiction, it may at any stage of the proceedings after the return of an indictment or the issuance of a warrant or summons against the defendant, order an examination of such defendant to be conducted by one or

*58*

more psychiatrists, or a psychiatrist and a psychologist, or in the instance of an individual charged with public intoxication, an alcoholism counselor:* * * *(d) Within five days after the receipt of the report on the issue of competency to stand trial, or if no observation pursuant to subsection (b) of this section has been ordered, within five days after the report on said issued following an examination under subsection (a) of this section, the court of record shall make a finding on the issue of whether the defendant is competent for trial.

**RELEVENT FACTS;**

In this particular Case, The State's theory was that the Petitioner/Defendant was a Homeless alcoholic that lived on the streets and river banks of Huntington West Virginia who went into a black fit of rage while under the influence of drugs and alcohol and attacked a complete stranger in a residence totally unknown to the Petitioner/Defendant.

As the theory aforementioned was a matter of record, The Court's Appointed Defense Counsel, Attorney John Laishley was fully aware of competency Issues, when he was informed of the extensive mental disorders and History in detail, **[EXHIBIT-MENTAL HISTORY],** Attorney Laishley stated that Judge Farrell would NOT entertain a Motion for a Psychological evaluation and that he would NOT file one, Attorney Laishley also REFUSED to investigate the Petitioners/Defendant's mental disorders and History after being informed of such as presented in **[EXHIBIT-MENTAL HISTORY],** There exists NO billing(s) for Investigation(s) into the aforementioned and matter of factly there was billing for only 3.7 hours of Investigation(s) for the entire Case and it's Defense for Trial, however the strategy, or lack of such is not the issue, at issue is the ineffective assistance of Attorney Laishley's Counsel by NOT presenting to the Court the extensive serious mental disorders and History of the Petitioner/Defendant, and also by NOT Motioning the Court for a Psychological evaluation of the Petitioner/Defendant.

54

In furtherance, Attorney Laishley REFUSED to Motion the Court for a Psychological Evaluation when the Petitioner/Defendant had attempted suicide while awaiting Trial, and in fact Attorney Laishley told the Petitioner/Defendant that if he was in the Petitioner's shoes, he would kill himself, and recommended cutting the throat as to hanging.

Had the extensive mental disorders and History of the Petitioner/Defendant been brought to the attention of the Court by Attorney Laishley, then certainly there would have been a Psychological Evaluation ordered pursuant to **W. Va. Code § 27-6A-1** to determine if the Petitioner/Defendant was competent at the time of the crime and to stand Trial.

As it is a Denial of Due process, Petitioner's rights were violated when Appointed Defense Counsel failed, during his trial, to order competency evaluation, as such should have been presented to the Court to establish the Petitioner's /Defendant's competency not only during the criminal event and during Trial, but also should have been presented at the sentencing phase as this Case was Capital and there was a determination as to Life with or without mercy.

**RELIEF SOUGHT**

Therefore the Petitioner seeks the relief of the Reversal of Conviction and Remand for a New Trial in the Cabell County Circuit Court due to the Ineffective Assistance of Counsel a violation of The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI.

60

**INEFFECTIVE ASSISTANCE OF COUNSEL;**

**FAILURE AND REFUSAL TO OBJECT TO STATE'S KNOWING USE OF PERJURED TESTIMONY**

The State's Prosecutor, Chris Chiles did knowingly and intentionally present False, Fabricated, Perjured testimony of a State's witness, Mr. James Marcum to the Court and it's Jurors so as to cause an intentional impact upon the Juror's decision and determination of guilt.

Prosecutor Chiles did allow and lead the testimony of James Marcum wherein he described in graphic detail that he watched his best friend being viciously beaten on the head repeatedly with a Ball Bat and that he witnessed his friends brains actually being beat out of his head, He also went into detail in explaining that he had to clean up skull fragments and Brain matter after the victim was removed from the scene and taken to the hospital, Prosecutor Chiles went even further and introduced a bat into evidence at that point and then allowed Mr. Marcum to testify and identify the bat as, "That is what beat his brains out of his head, It Is! "and "that boy beat him to death", this testimony cast a cloud over the entire Court room and had the jurors in tears, crying and sobbing uncontrollably and without a doubt had a very serious and determinative effect on the Jurors and the decision in which was returned, not only as to guilt but also as to the penalty of life without.

As this testimony was being presented and led by Prosecutor Chile's, The Petitioner's/Defendant's Appointed Lawyer REFUSED to object to the testimony being offered, In fact, Petitioner/Defendant pleaded with Attorney Laishley's assistant Greg Cook to OBJECT since this testimony was in fact impossible on it's face as ALL medical records show, However, This testimony was left unchallenged and uncorrected by Petitioner's Defense Attorney.

61

The fact that this testimony was known to be false, fabricated and perjured is evidenced by Attorney Laishley's presenting the very facts of the victim's never receiving or suffering ANY type of head injury at a pretrial hearing and was supported by ALL medical records and reports relating to the victim.

The fact that this testimony was not only unchallenged but allowed to be led by Defense Counsel is beyond ineffective, it was malicious and intentional and caused the Petitioner a severe prejudice and an impact on the Juror's that was irreparable as they were left in tears, crying and sobbing uncontrollably, in fact it was the Court, Judge Farrell who had to chime in and instruct Prosecutor Chiles to "Stop Leading" the witness, only after the Testimony was allowed to pass unchallenged.

**RELIEF SOUGHT;**

Therefore the Petitioner seeks the relief of the Reversal of Conviction and Remand for a New Trial in the Cabell County Circuit Court due to the Ineffective Assistance of Counsel a violation of The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI.

62

**State's knowing Use of Perjured Testimony;**

The State's Prosecutor, Chris Chiles did knowingly and intentionally present False, Fabricated, Perjured testimony of a State's witness, Mr. James Marcum to the Court and it's Jurors so as to cause an intentional impact upon the Juror's decision and determination of guilt.

Prosecutor Chiles did allow and lead the testimony of James Marcum wherein he described in graphic detail that he watched his best friend being viciously beaten on the head repeatedly with a Ball Bat and that he witnessed his friends brains actually being beat out of his head, He also went into detail in explaining that he had to clean up skull fragments and Brain matter after the victim was removed from the scene and taken to the hospital, Prosecutor Chiles went even further and introduced a bat into evidence at that point and then allowed Mr. Marcum to testify and identify the bat as, "That is what beat his brains out of his head, It Is! "and "that boy beat him to death", this testimony cast a cloud over the entire Court room and had the jurors in tears, crying and sobbing uncontrollably and without a doubt had a very serious and determinative effect on the Jurors and the decision in which was returned, not only as to guilt but also as to the penalty of life without.

The Prosecutor, Chris Chiles was fully aware of the facts of the Case, those being that the victim in this instance NEVER received ANY such head injury as was being described in detail to the Jury, more specifically there was NO BRAIN EXPOSURE, NO SKULL FRACTURES, as ALL of the MEDICAL evidence establishes, the victim was alert, coherent, in a minimal pain level of 2 on a 10 scale, and IN FACT the victim signed his own medical releases for surgeries, as he was NOT beat to death as was described by the State's witness James Marcum,

63

in fact the Victim had a broken leg, fingers and died more than 9 days AFTER the event, and the cause of death was a heart attack, as this is evidenced by all of the existing medical records and autopsy report in which the State's Prosecutor Chris Chiles was familiar with and yet he knowingly and willingly led and presented this prejudicial fabricated, false and perjured testimony to the Jury, and allowed such to go uncorrected intentionally.

It is a basic principle of law that prosecutors have a duty to the court not to knowingly encourage or present false testimony. It has been correctly observed that when the state obtains a conviction through the use of evidence that its representatives know to be false, the conviction violates the **Due Process Clause of the Fourteenth Amendment. U.S. Constitution. amend. XIV**. The state's knowing use of perjured testimony to obtain a criminal conviction constitutes a violation of due process of law. Although it is a violation of due process for the state to convict a defendant based on false evidence, such conviction will not be set aside unless it is shown that the false evidence had a material effect on the jury verdict.

A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.

A conviction acquired through the knowing use of perjured testimony by the government violates due process, regardless of whether the government solicited the testimony or simply allowed it to pass uncorrected. **United States v. Kelly**, 35 F.3d 929, 933 (4th Cir. 1994) (citing **Napue v. Illinois**, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)). However, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured." **United States v. Griley,** 814 F.2d 967, 971 (4th Cir. 1987).

6 4

Petitioner also argues due process violations based on the knowing use of perjured testimony by the government. A conviction acquired through the knowing use of perjured testimony by the government violates due process.  **United States v. Kelly**, 35 F.3d 929, 933 (4th Cir. 1994)(citing **Napue v. Illinois,** 360 U.S. 264, 269, 79 S. Ct. 1173, 1177, 3 L. Ed. 2d 1217 (1959)). This is true whether the government solicited testimony it knew or should have known to be false or simply allowed such testimony to pass uncorrected. Id. (citing **United States v. Agurs**, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397, 49 L. Ed. 2d 342 (1976)). The Court has consistently set aside convictions obtained by the knowing use of false testimony when there was "any reasonable likelihood that the false testimony could have affected the judgment of the jury." **United States v. Agurs**, 427 U.S. 97, 106, 96 S. Ct. at 2399. Courts hold that even when false testimony bears only on the credibility of government witnesses and other evidence has called the witnesses' credibility into question, a conviction must be reversed when "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Agurs, 427 U.S. at 103, 96 S. Ct. at 2397. The courts have predicated that conclusion on the fact that "the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." Napue, 360 U.S. at 269, 79 S. Ct. at 1177. The knowing use of perjured testimony would force the government to demonstrate that the use of such testimony was "harmless beyond a reasonable doubt." Bagley, 473 U.S. at 679 n.9.

65

**CONCLUSION;**

In order to succeed on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate **(1)** that the prosecutor presented false testimony; **(2)** that the prosecutor knew or should have known it was false; and **(3)** that there is a reasonable likelihood that the perjured testimony could have affected the verdict.

Therefore the Petitioner offers as **(1)** Prosecutor Chris Chiles did present the False Testimony of James Marcum that described in graphic detail events and injuries that were physically impossible as the medical records clearly prove; **(2)** Prosecutor Chris Chiles knew such testimony was false, fabricated and perjured as he was aware that events and injuries described by the witness were physically impossible as the medical records clearly prove which were in Prosecutor Chiles possession; and **(3)** There is no doubt that the aforementioned testimony of James Marcum that went uncorrected and offered as fact had an effect on the Juror's and the verdict, as they were left in tears, crying and sobbing uncontrollably, and creating a hostility felt throughout the Court, Without question this testimony had a direct impact on the Juror's verdict and also an impact as to the sentence they passed that determined a Life Without finding.

**RELIEF SOUGHT;**

A conviction acquired through the knowing use of perjured testimony by the government violates due process Clause of Fifth Amendment rights by presenting perjured testimony at trial and should therefore be REVERSED and REMANDED for a new Trial in Cabell County West Virginia Circuit Court.



**State's failure to present competent evidence to the jury;**

**Intentionally Presenting testimony incredible as a matter of law**

The State's Prosecutor, Chris Chiles did knowingly and intentionally present False, Fabricated, Perjured testimony of a State's witness, Mr. James Marcum to the Court and it's Jurors so as to cause an intentional impact upon the Juror's decision and determination of guilt.

Prosecutor Chiles did allow and lead the testimony of James Marcum wherein he described in graphic detail that he watched his best friend being viciously beaten on the head repeatedly with a Ball Bat and that he witnessed his friends brains actually being beat out of his head, He also went into detail in explaining that he had to clean up skull fragments and Brain matter after the victim was removed from the scene and taken to the hospital, Prosecutor Chiles went even further and introduced a bat into evidence at that point and then allowed Mr. Marcum to testify and identify the bat as, "That is what beat his brains out of his head, It Is! "and "that boy beat him to death", this testimony cast a cloud over the entire Court room and had the jurors in tears, crying and sobbing uncontrollably and without a doubt had a very serious and determinative effect on the Jurors and the decision in which was returned, not only as to guilt but also as to the penalty of life without.

As the testimony presented was impossible and "unbelievable on its face," in that it contained "facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature, as evidenced by ALL medical reports, Autopsy Reports, Police Reports, Paramedic Reports and Fire Department Reports, there was no such injuries inflicted upon the Victim, NOR was there the exposure of Brain matter or skull fragments, there also was no cleaning up of brain matter and skull fragments, as this is IMPOSSIBLE since the victim had never suffered such injuries and the testimony of such left uncorrected by the court knowing that such was impossible was not only prejudicial but borderline Judicial misconduct as it is held that;



When testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law. **U.S. v. Lerma**, 657 F.2d 786, 789 (5th Cir. 1981) (Unit A) (citing cases). 22 **Accord U.S. v. Mack**, 695 F.2d 820 (5th Cir. 1983); **U.S. v. Narciso**, 446 F. Supp. 252, 282-83 (E.D. Mich. 1977).

To find testimony incredible as a matter of law, it must "relate to facts that the witness[es] could not possibly have observed or to events which could not have occurred under the laws of nature." **United States v. De La Rosa**, 171 F.3d 215, 221 (5th Cir. 1999) (citation and quotation marks omitted). "Laws of nature" refers to facts or events that are impossible in a physical sense; not merely unlikely due to human nature. See **United States v. Lindell**, 881 F.2d 1313, 1322 (5th Cir. 1989) ("Only when testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law.") (citation omitted); see also United States v. Shaw, 338 F. App'x 404, 408 (5th Cir. 2009) (holding that defendant "appears to confuse 'the laws of nature' with 'human nature'").

A fact finder is not entitled to credit testimony that is "incredible as a matter of law." **United States v. Rivera**, 775 F.2d 1559, 1561 (11th Cir. 1985). This exception, however, is "stringent" and is satisfied only when the testimony is "unbelievable on its face," in that it contains "facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature." Id. (quoting **United States v. Cravero**, 530 F.2d 666, 670 (5th Cir. 1976) (alterations in original); see also **United States v. Williams**, 49 Fed. Appx. 420, 424 (4th Cir. 2002). In other words, to be "incredible as a matter of law," the testimony must be more than merely implausible; it must be impossible, and if it is "incredible as a matter of law," an agency cannot rely on it in denying a claim. **Donahue v. Barnhart**, 279 F.3d 441, 446 (7th Cir. 2002)

68

The doctrine of inherent unbelievability arguably can be reconciled with the constitutional rights discussed above by interpreting them as limited to the right to present competent evidence to the jury. While this definitional move seemingly solves all, it misses the point. The important point is that the court must define "competent evidence" broadly so as to afford the defendant his constitutional rights and to preserve the historic role of the criminal jury in deciding matters of credibility.

The constitutional considerations discussed above -- the reasonable doubt requirement and implementing rules, the defendant's right to testify on his own behalf, and his right to a jury trial -- combine to cast serious doubt on the Court's authority to rule the testimony of a defendant or other defense witnesses unbelievable as a matter of law. Indeed, the court has been unable to find a single case where a court has so ruled.

Even as applied against government witnesses, the doctrine of inherent unbelievability has been narrowly construed in criminal cases.

Only when testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law. **U.S. v. Lerma**, 657 F.2d 786, 789 (5th Cir. 1981) (Unit A) (citing cases). 22 Accord **U.S. v. Mack**, 695 F.2d 820 (5th Cir. 1983); **U.S. v. Narciso**, 446 F. Supp. 252, 282-83 (E.D. Mich. 1977).

## CONCLUSION;

The fact that this testimony was not only unchallenged but allowed to be led by the Court's not applying The doctrine of inherent unbelievability while being aware of the medical facts and impossibility of the victim ever receiving the injuries which were fraudulently detailed and intentionally presented by perjured testimony violates due process Clause of the Fourteenth Amendment. U.S. Constitution and establishes Judicial Misconduct and an abuse of discretion by such.

69

**RELIEF SOUGHT;**

Therefore the Petitioner seeks the relief of the Reversal of Conviction and Remand for a New Trial in the Cabell County Circuit Court due to the Court's abuse of discretion, Judicial misconduct,  The Court's failure to apply  doctrine of inherent unbelievability and a violation of The Sixth Amendment to the U.S. Constitution.

70

**Prosecutorial misconduct;**

**Denial of fundamental fairness by the State's knowing use of false evidence at trial**

The prosecutor, Chris Chiles committed prosecutorial misconduct by knowingly and intentionally presenting False, Fabricated, Perjured testimony of a State's witness, Mr. James Marcum to the Court and it's Jurors so as to cause an intentional impact upon the Juror's decision and determination of guilt.

By presenting such perjured testimony  State's Prosecutor Chris Chiles intentionally engaged in prosecutorial misconduct when it "knowingly and intentionally used . . . perjured testimony in order to impact the juror's and cause hostility towards the Petitioner/Defendant so as to obtain a conviction.

The specific perjured testimony of a State's witness Mr. James Marcum was presented in bad faith and knowingly that such was false, fraudulent, fabricated and perjured to the Court and it's Jurors so as to cause an intentional impact upon the Juror's decision and determination of guilt.

Prosecutor Chiles did allow and lead the testimony of James Marcum wherein he described in graphic detail that he watched his best friend being viciously beaten on the head repeatedly with a Ball Bat and that he witnessed his friends brains actually being beat out of his head, He also went into detail in explaining that he had to clean up skull fragments and Brain matter after the victim was removed from the scene and taken to the hospital, Prosecutor Chiles went even further and introduced a bat into evidence at that point and then allowed Mr. Marcum to testify and identify the bat as, "That is what beat his brains out of his head, It Is! "and "that boy beat him to death", this testimony cast a cloud over the entire Court room and had the jurors in tears, crying and sobbing uncontrollably and without a doubt had a very serious and determinative effect on the Jurors and the decision in which was returned, not only as to guilt but also as to the penalty of life without.

71

Through the prosecutorial misconduct of Chris Chiles presenting perjured testimony intentionally, there is a blatant violation of the Fundamental Fairness clause and the Petitioner was in fact denied the right of Due process through Prosecutor Chile's misconduct standing in violation of the Petitioner's 14th Amendment of the United States Constitutional right of Due Process.

This misconduct is not only of Constitutional context, but stands within the realm of Criminal by it's intentionally being presented and allowed to pass uncorrected in order to Convict a person for a Capital Offense.

### RELIEF SOUGHT

Petitioner seeks the relief of a Vacation of his Conviction(s) the Reversal of Sentence and the Remand for a New trial in the Cabell County Circuit Court, Petitioner seeks these Reliefs for the violations of his 14th and 6th Amendment Rights of Due Process as are garunteed by the United States Constitution.

72

**Double Jeopardy;**

Petitioner herein was indicted for BOTH 1st Degree Murder and Burglary, the State's theory of the Case was that during the commission of a Burglary, Specifically, an Entering without breaking into the victim's home, during this event the Petitioner/Defendant was supposedly in a severe intoxicated state, went into a fit a black rage and then did intentionally kill the Victim, however as the presentment of a Felony Murder theory was pursued, at Trial's end the State deviated from said theory and failed to properly instruct the Jury as to the two categories of Murder, willful, deliberate, and premeditated killing and felony-murder—if  under the facts of the particular case, the jury can find the defendant guilty of either category of first-degree murder.

Double jeopardy prohibits an accused charged with felony murder, as defined by **W. Va. Code § 61-2-1**, from being separately tried or punished for both murder and the underlying enumerated felony.

Double jeopardy prohibits an accused charged with felony murder, as defined by **W. Va. Code § 61-2-1** from being separately tried or punished for both murder and the underlying enumerated felony." Syllabus point 8, **State v. Williams**, [172] W. Va. [295], 305 S.E.2d 251 (1983).Syl. pt. 8, **State v. Giles**, 183 W. Va. 237, 395 S.E.2d 481 (1990).

The double jeopardy clauses of the federal and state constitutions protect an accused in a criminal proceeding from multiple prosecutions and multiple punishments for the same offense. This protection is held to prohibit serial prosecutions and the imposition of separate punishments for both a greater and a lesser included offense arising out of a single criminal act or transaction.

23

Robbery is a lesser included offense of felony-murder if a conviction for the greater offense (felony-murder) could not be had without conviction for the lesser crime (robbery). If the defendant is convicted of and sentenced to imprisonment for both murder and robbery, his sentence would violate the double jeopardy prohibition against multiple punishments.

The determination of whether a person is being tried for or has been convicted of both a greater and a lesser included offense does not necessarily turn on whether he is charged with violating more than one criminal statute. Since many statutory crimes are duplicative, separate statutory crimes may be the "same offense" under the double jeopardy clause, even though they are not identical in either constituent elements or actual proof. In the absence of any expression of legislative intent on the issue, the test of whether violations of separate statutory provisions arising out of one criminal episode constitute the "same offense" for double jeopardy purposes is the "same evidence" test. Where the same act or transaction constitutes a violation of two distinct provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

The crime of felony-murder is a distinct category of first-degree murder, which is defined as murder in the commission of, or attempt to commit, arson, rape, robbery or burglary.

**W. Va. Code § 61-2-1**. To sustain a conviction of felony-murder, proof of the elements of malice, premeditation or specific intent to kill is not required. Rather, the elements which the State is required to prove to obtain a conviction of felony murder are: (1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries received during the course of such commission or attempt.

74

In a prosecution for first-degree murder, the State must submit jury instructions that distinguish between the two categories of first-degree murder—willful, deliberate, and premeditated killing and felony-murder—if, under the facts of the particular case, the jury can find the defendant guilty of either category of first-degree murder.

When the State also proceeds against the defendant on the underlying felony, the verdict forms provided to the jury should also reflect the foregoing distinction so that, if a guilty verdict is returned, the theory of the case upon which the jury relied will be apparent. **State v. Giles**, 183 W. Va. 237, 395 S.E.2d 481, 1990 W. Va. LEXIS 90 (W. Va. 1990); **State v. Walker**, 188 W. Va. 661, 425 S.E.2d 616, 1992 W. Va. LEXIS 269 (W. Va. 1992); **State v. Hottle**, 197 W. Va. 529, 476 S.E.2d 200, 1996 W. Va. LEXIS 144 (W. Va. 1996).

In the Petitioner's Case the distinction between the two categories of first-degree murder—willful, deliberate, and premeditated killing and felony-murder was NOT reflected in the verdict forms as according to the Citations aforementioned so to establish the theory of the case upon which the jury relied, and in furtherance the Court allowed an untimely and after set deadline on the last day of Trial in violation of W.Va. Trial Court Rule 42.02 Presentation of Jury Instructions;

1) Each Counsel shall prepare jury instructions, indicating citations and authorities, and present them to the presiding Judicial officer and serve them on opposing Counsel NOT LESS than three (3) business days before the day set for trial.

The Instructions submitted were called the "Jenkins Charge" and were relevant to a Felony murder case, **State V. Jenkins** 229 W. Va. 415; 729 SE2d 250729 S.E.2d 250; 2012 Holding that;

25

It is well settled that the consequences of an act which is the efficient cause of the death of another are not excused, nor is the criminal responsibility for causing death lessened, by the pre-existing physical condition of the person killed which rendered him or her unable to withstand the shock of the wound inflicted, and without which predisposed condition the blow would not have been fatal. It is immaterial that the accused did not know that the deceased was in a feeble condition which facilitated the killing. Responsibility for homicide attaches to one who accelerates the death of a person in poor physical condition. It is also clear that foreseeability is not an element in the corpus delicti. The required causation is not the type of causation involved in tort liability. It is not necessary that the defendant could have reasonably anticipated that his or her act would cause death.

**CONCLUSION;**

Double jeopardy prohibits an accused charged with felony-murder, as defined by W. Va. Code § 61-2-1, from being separately tried or punished for both murder and the underlying enumerated felony, and in the record shows that in this case the Petitioner was in fact charged and convicted during Trial of BOTH, 1st degree murder and the underlying felony of Burglary, constituting a Double Jeopardy violation of The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution and Article III, § 5 of the United States Constitution.

**RELIEF SOUGHT;**

Petitioner seeks the Reversal of Conviction(s) for 1st Degree Murder and Burglary and the Remand back to the Cabell County Circuit Court for New Trial for the violation(s) of the afore cited Constitutional Amendments; The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution and Article III, § 5 of the United States Constitution.

26

EGAL MAIL
lease Log As;
2254 Fed. Habeas

EDWARD JESS DREYFUSE #3534873
112 N.R.C.Drv.
Moundsville,W.Va. 26041



9114 9999 4431 3797 6089 75

USPS TRACKING #

UNITED STATES
POSTAL SERVICE®

Label 400  Jan. 2013
7690-16-000-7948

U.S. DISTRICT COURTS CLERK
TERESA L. DEPPNER
845 FIFTH AVENUE, ROOM 101
HUNTINGTON, W.Va.



U.S. MARSHALS SERVICE
X-RAYED
25401
BY: _____





US POSTAGE PITNEY BOWES
ZIP 26041
02 1W
0001402113 AUG 17 2016
$ 006.80°