**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

| | | |
|---|---|---|
| **EDWARD JESS DREYFUSE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Civil Action No. 3:16-06717** |
| | ) | |
| **KAREN PSZCZOKOWSKI, Warden,** *et al.*, | ) | |
| | ) | |
| **Respondents.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Petitioner's "Motion for Stay and Abeyance" (Document No. 2), filed on July 22, 2016; and (2) Respondents' "Motion to Dismiss for Failure to Exhaust" (Document No. 18), filed on November 30, 2016. By Order entered on August 3, 2016, the above case was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court deny Petitioner's "Motion for Stay and Abeyance" and grant Respondents' "Motion to Dismiss for Failure to Exhaust."

## PROCEDURE AND FACTS

**1.     State Court Proceedings:**

On June 19, 2012, the Grand Jury of Cabell County, West Virginia, returned an Indictment against Petitioner charging him with one count of Murder (Count 1), two counts of Assault During the Commission of a Felony (Counts 2 and 3), and one count of Burglary (Count 4). (Document No. 18-2.) Following a four-day jury trial, Petitioner was convicted on October 30, 2013, of First Degree Murder and Burglary. (Document No. 18-3.) The Circuit Court issued

"Orders of Commitment" dated November 6, 2013, which remanded Petitioner to the custody of the West Virginia Department of Corrections for not less than one (1) nor more than fifteen (15) years on the burglary conviction, and life without mercy on the First Degree Murder Conviction. (Document Nos. 18-1 and 18-13, pp. 2 – 3.) Subsequently, Petitioner, by counsel, filed a Motion to Set Aside Verdict and Motion for a New Trial. (Document No. 18-1, p. 5.) A hearing on the motions was conducted on January 27, 2014. (Document No. 18-1, p. 5.) By Order entered on February 19, 2014, the Circuit Court denied Petitioner's Motion to Set Aside Verdict and Motion for a New Trial. (Id.) On March 12, 2014, the Circuit Court appointed Mr. Glen D. Conway as counsel. (Document No. 18-1.) In November, 2014, Petitioner filed a Petition for Writ of Mandamus with the West Virginia Supreme Court requesting that the Circuit Court be required to enter a Sentencing Order and appoint new counsel. (Document No. 24-1.) On December 2, 2014, the Circuit Court entered its Sentencing Order imposing an indeterminate sentence of 1 to 15 years for the Burglary conviction and a sentence of life without mercy for the First Degree Murder conviction, to run consecutively. (Document No. 18-3.)

On December 8, 2014, Petitioner, by counsel, Mr. Conway, filed a Notice of Appeal. (Document No. 18-4.) Subsequently, counsel was notified that the notice of appeal was incomplete and counsel filed an Amended Notice of Appeal on December 17, 2014. (Document No. 18-6.) By letter filed on December 15, 2014, Petitioner requested Mr. Conway to remove himself as counsel. (Document No. 24-2.) By Scheduling Order entered on December 19, 2014, the West Virginia Supreme Court of Appeals set forth deadlines for the filing of transcripts and briefs. (Id.) By Order entered on December 22, 2014, Mr. Timothy P. Rosinsky was appointed as appellate counsel. (Document No. 24-5.) Mr. Rosinsky filed two subsequent Motions for

2

Extension of Time to Perfect Appeal, which were granted by the West Virginia Supreme Court. (Document No. 24-29.) On July 24, 2015, Petitioner, acting *pro se*, filed a Motion Requesting Status of Counsel and Appeal. (Document No. 24-6.) On July 30, 2015, Mr. Rosinsky filed a Motion to Withdraw as Appellate Counsel stating as follows: (1) "Mr. Dreyfuse has terminated my representation, refused to communicate today with me, and forbade me from filing anything in his case, thereby preventing me from perfecting Mr. Dreyfuse's appeal;" and (2) "I have completed 95% of the Brief, and needed only to speak with Mr. Dreyfuse today to complete his Affidavit in support of the appeal, but Mr. Dreyfuse refused, thru a jail counselor, to accept the call;" and (3) "I also sent Mr. Dreyfuse drafts of my Brief, his Affidavit and the Appendix." (Document No. 24-7.) On August 11, 2015, the West Virginia Supreme Court granted Mr. Rosinsky's Motion to Withdraw and remanded the case to the Circuit Court for the limited purpose of appointing new counsel. (Document No. 24-8.) On August 12, 2015, Petitioner, acting *pro se*, filed a "Motion to Prohibit Filing Without Consultation From Defendant" requesting that the Court enter an order prohibiting "any counsel from filing any motion, petitions, writ, or anything addressing the Petitioner's Case No. 14-1251 (direct appeal) until counsel first consults with Petitioner." (Document No. 24-9.)

On August 14, 2015, Petitioner, acting *pro se*, filed his Petition for Writ of *Habeas Corpus* in the Circuit Court of Cabell County. (Document No. 18-7.); Dreyfuse v. Pszczolkowski, Case No. 15-C-580 (Cir. Ct. Cabell Co. Dec. 4, 2015). In his Petition, Petitioner asserted the "denial of effective assistance of counsel" and stated that other grounds were "to be identified/need assistance." (Id.) By Order entered on September 1, 2015, the Circuit Court appointed Mr. Kenneth Hicks as appellate and *habeas* counsel. (Document No. 24-10.) The

Circuit Court further directed that Mr. Hicks had until October 20, 2015, to file an Amended *Habeas* Petition. (Id.) The West Virginia Supreme Court entered an Amended Scheduling Order on October 5, 2015. (Document No. 24-11.) On October 2, 2015, Petitioner filed in the Circuit Court a Motion requesting a consult with counsel and an extension of the *habeas* filing deadline. (Document No. 24-13.)[1] On October 7, 2015, Petitioner filed a Motion to Allow a *Pro Se* Amendment of *Habeas* Petition and his Amended *Habeas* Petition. (Document No. 24-14.) In support, Petitioner stated that "Attorney Hicks has not initiated nor established ANY communication with the petitioner." (Id.) In his Amended *Habeas* Petition, Petitioner requested that the following grounds of error be added to his original *habeas* Petition:

1. The State's knowing use of false, fabricated and perjured testimony by the State's witness, Mr. James Marcum, in order to obtain a conviction for 1st Degree Murder and Burglary, while the Prosecutor, Chris Chiles, knowingly, willingly and somewhat in a leading manner presented such perjured testimony by a State's witness at trial to a jury knowing that such testimony was false, fabricated and perjured.

2. The State Prosecutor's FAILURE or DESIRE to step in and rectify, correct, or bring to light before the Court and the trial jurors that the testimony given by State's witness Mr. James Marcum was FALSE, FABRICATED, and perjured and totally untrue and unsupported by the FACTS of the medical records, doctors' reports and autopsy reports.

3. The States Prosecuting Attorney, Chris Chiles, allowed perjured testimony to be entered as FACT in this trial and was AWARE of the facts of the case that proved this testimony was FLASE, FABRICATED, AND PERJURED.

4. The State's knowing use of perjured testimony is held as fundamentally unfair and a violation of the 14th Amendment of the United States

---

[1] Petitioner further stated that he had "petitioned the West Virginia Supreme Court of Appeals for a Temporary Injunction to prohibit attorney Hicks from filing ANYTHING in the petitioner's behalf until Attorney hicks affords the petitioner with consultation so that petitioner can make informed decisions as to how best proceed in order to protect his best interests." (Document No. 24-13.)

4

Constitution and is a violation of the right to due process.

(Id., p. 8.) By Order entered on October 15, 2015, Mr. Hicks was relieved as counsel and Mr. Stephen M. Wright was appointed as counsel. (Document No. 24-15.)

On November 20, 2015, Petitioner filed in the West Virginia Supreme Court a correspondence directing current counsel not to file any pleadings on his behalf "without my express permission and only with notarized letter by me of approval of such." (Document No. 24-29.) On November 23, 2015, Mr. Wright filed a Motion for Extension of Deadlines and Entry of a Second Amended Scheduling Order stating that counsel was new to the case and additional time was required to meet with Petitioner. (Document No. 18-13 and Document No. 24-29.) An Amended Scheduling Order was filed in the West Virginia Supreme Court on December 1, 2015. (Document No. 24-29.) On November 25, 2015, Mr. Wright met with Petitioner for a client conference at the Northern Regional Jail. (Document No. 18-13, p. 3.) During the conference, Petitioner "expressed his grave concern about filing [his] direct appeal and verbally forbade counsel from filing direct appeal." (Id.) On December 1, 2015, a status conference was conducted before the Circuit Court with Petitioner appearing via video conferencing and by counsel regarding Petitioner *habeas* petition. (Document No. 18-9.) During the hearing, the Circuit Court addressed the "timeliness" of Petitioner's *habeas* Petition. (Id.) By Order entered on December 4, 2015, the Circuit Court dismissed Petitioner's *habeas* petition as "untimely filed" due to the pending direct appeal before the West Virginia Supreme Court and resentenced Petitioner "for the purpose of perfecting an appeal to the West Virginia Supreme Court."[2] (Id.)

On December 17, 2015, Petitioner, acting *pro se*, filed a Motion for Waiver of a Direct

---

[2] Although the Circuit Court referred to Petitioner's *habeas* petition as being "untimely filed," it appears that the Circuit Court dismissed Petitioner's *habeas* petition as premature.

Appeal in the Circuit Court and the West Virginia Supreme Court. (Document No. 18-10.) On January 4, 2016, Petitioner, acting *pro se*, filed his second Petition for Writ of *Habeas Corpus* in the Circuit Court of Cabell County. (Document Nos. 18-11 and 18-12.); <u>Dreyfuse v. Pszczolkowski</u>, Case No. 16-C-6 (Cir. Ct. Cabell Co.). In his Petition, Petitioner asserted "denial of effective assistance of counsel and stated that other grounds were "to be identified, need effective assistance of counsel to do so since there exists other issues to support the claim." (Document No. 18-12.) On or about January 6, 2016, Mr. Wright met with Petitioner at the Northern Regional Correction Center for a client conference "to discuss his legal rights to an appeal and the effect of forbearance of his rights would have on the process and his inability to raise potential appealable grounds after a waiver." (Document No. 18-13, p. 4.) Despite counsel's advice and warnings, Petitioner instructed counsel that he did not wish to move forward with his direct appeal. (<u>Id.</u>) On the same day, Mr. Wright filed a Motion for Extension of Time with the West Virginia Supreme Court, which was subsequently granted. (Document No. 24-29.) On January 7, 2016, Petitioner signed a Statement confirming his desire to withdraw his direct appeal. (Document No. 24-30.) On January 26, 2016, Petitioner, acting *pro se*, filed his "Motion for Disqualification" of Circuit Court Judge Paul Farrell. (Document No. 24-12.) On February 4, 2016, Petitioner, by counsel, Mr. Wright, filed a "Motion for Withdraw of Direct Appeal" with the West Virginia Supreme Court. (Document No. 18-3.) In support of the Motion, counsel stated as follows: (1) "Counsel has a professional duty to abide by the client's decisions concerning the objective of representation;" [3] and (2) "Although the Petitioner's rights to

---

[3]   Specifically, counsel explained as follows:

In the present case, Petitioner has at all times maintained the express desire to proceed with this matter via writ of habeas corpus subjiciendum, as

6

competent and effective assistance of counsel have been violated, such a claim is more appropriately raise in a petition for writ of *habeas corpus* subjiciendum, and should not be brought upon direct appeal." (Id.) By Administrative Order filed on February 12, 2016, the West Virginia Supreme Court denied Petitioner's Motion for Disqualification concerning the removal of Circuit Court Judge Paul Farrell as presiding judge over Petitioner's pending *habeas* proceedings in Civil Action No. 16-C-6. (Document No. 24-16.) By Order entered on February 16, 2016, the West Virginia Supreme Court granted the "Motion for Withdraw of Direct Appeal." (Document No. 18-14.)

On March 28, 2016, Petitioner, acting *pro se*, filed with the West Virginia Supreme Court a Motion for Disqualification of Chief Justice Menis Ketchum. (Document No. 24-32.) On March 29, 2016, Petitioner, acting *pro se*, filed with the West Virginia Supreme Court a Petition for Writ of Prohibition requesting that Circuit Court Judge Paul Farrell be "prohibited from any and all proceedings concerning Petitioner's pending Petition for Writ of Habeas Corpus on the docket of Cabell County." (Document No. 24-19.) Petitioner further requested that the lower court proceedings be stayed. (Id.) Also on March 29, 2016, Petitioner filed in the Circuit Court a

---

opposed to filing for direct appeal. In fact, his prior counsel was terminated on the basis that he intended to file his brief with this Court on the basis of ineffective assistance of counsel, without first filing the writ of habeas corpus. Petitioner has filed multiple motions with clear directive to counsel that they are not to file with the courts any pleadings on his behalf without his express written consent.

Petitioner has remained steadfast in this decision and clear directives to counsel, not to proceed with the direct appeal and pursue his petition for writ of habeas corpus subjiciendum on the grounds of ineffective assistance of counsel in the Cabell County Circuit Court. See Signed Statement by Petitioner, inadvertently dated December 7, 2015, signed January 7, 2016, attached as Exhibit B. In this statement, the Petitioner's intent is clear. He does not wish to pursue the issue of ineffective assistance of counsel on direct appeal; instead, he wishes to raise this issue by writ of habeas corpus.

(Document No. 18-13, p. 5 and Document No. 24-30.)

7

"Declaration of Non-Representation for Action Contained" stating that he was acting *pro se* concerning his filings requesting the removal of Circuit Court Judge Paul Farrell and that a "Motion to Suspend Proceedings must be filed and added to the docket." (Document No. 24-18.) By Administrative Order enter on March 31, 2016, the Chief Justice Ketchum denied Petitioner's Motion to Disqualify him noting that "Judge Paul T. Farrell [is] a different person than Lawyer Paul T. Farrell, who is a member of Chief Justice's former law firm." (Document No. 24-20.) On May 5, 2016, Petitioner, acting *pro se*, filed an additional Motion for Disqualification requesting that Circuit Court Judge Paul Farrell be disqualified "from further participation in any proceedings involving the Petitioner." (Document No. 24-21.) On May 12, 2016, Petitioner, acting *pro se*, filed with the West Virginia Supreme Court a "Petition for Writ of Mandamus (Document No. 24-33.) requesting that his "habeas be served without further delay" and that Circuit Court Judge Paul Farrell be removed from the case. (Document No. 24-33.) By Order entered on June 2, 2016, the West Virginia Supreme Court denied Petitioner's Petition for Writ of Prohibition against Circuit Court Judge Paul Farrell, Petitioner's Motion to Stay, and Petitioner's Motion for Disqualification of Chief Justice Ketchum. (Document No. 24-34.)

On June 22, 2016, Petitioner, acting *pro se*, filed in the Circuit Court a FOIA request. (Document No. 18-11.) On July 5, 2016, Petitioner, acting *pro se*, filed a "Petition for Right of Review" initiating another civil action before this Court. (Document No. 25-10.) On July 9, 2016, Mr. Wright filed a "Motion for Leave to Withdraw as Counsel" noting that there had been a "complete breakdown in the attorney-client relationship." (Document No. 24-23.) On July 12, 2016, Mr. William T. Watson responded to Petitioner's FOIA request. (Document No. 18-11.)

By Order entered on July 18, 2016, the Circuit Court directed Petitioner to file a Response to Mr. Wright's "Motion for Leave to Withdraw as Counsel." (Document No. 18-11.) On July 20, 2016, Petitioner filed a Petition for Writ of Mandamus with the West Virginia Supreme Court arguing that his *habeas* petition had been (1) "suspended and under a stay due to pending Civil Actions in the United States District Court, Southern District, where Petitioner has proceeded against Judge Paul T. Farrell;" and (2) delayed "by Judge Farrell's not recusing himself" based on the federal proceedings. (Document No. 7-2, pp. 42 - 48.) By Order entered on August 1, 2016, the Circuit Court granted Mr. Wright's "Motion for Leave to Withdraw as Counsel' and appointed Mr. Todd Meadows as counsel. (Document No. 24-24.) On August 4, 2016, the Circuit Court received Petitioner's Response agreeing that Mr. Wright should be allowed to withdraw as counsel. (Document No. 24-25.)

On September 8, 2016, Petitioner filed his *pro se* "Amended Petition for Writ of Habeas Corpus." (Document No. 24-28.) As grounds for relief, Petitioner asserted the following:

1.     The failure of defense counsel to conduct any investigation or to call any witnesses, or to introduce any evidence whatsoever to corroborate Defendant's testimony of the underlying events that ultimately led to Defendant's conviction of both Burglary and for First Degree Murder resulting from a single criminal action, occurrence, episode or transaction, constituting the ineffective assistance of counsel which failure was both inadequate and such inadequacy had prejudiced the outcome of this case.

2.     Defense counsel's failure to understand the law set forth in the Court's so-called "Jenkins Charge" to the jury, and counsel's failure to explain that precedent to the Defendant when he decided to reject the State's plea offer was very prejudicial to this case and constitutes the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article III, § 14 of the West Virginia State Constitution.

3.     Defense counsel's offering expert testimony in defense of his very apparent mistake in law that was a result of the convictions in this case to First Degree Murder and Burglary.

9

4.      Defense counsel's failure and refusal to conduct a meaningful investigation into the Petitioner's extensive history of mental and psychological disorders, and in refusing to motion to Court for a psychological evaluation after being made aware of previous history of psychological disorders and a suicide attempt while awaiting trial.

5.      Failure by defense counsel to object to the State's knowing use of perjured testimony and the presentment of such by prosecutor Chris Chiles while aware that such testimony was in fact perjured, false, fabricated and fraudulent and impossible according to all relevant medical reports, police reports, autopsy reports, paramedic reports that were in possession of both, the State's prosecutor and the appointed defense counsel prior to and during trial.

6.      The State's knowing use of perjured testimony, where the State's Prosecutor Chris Chiles did knowingly and intentionally present the false, fabricated, perjured testimony of a State's witness to the Court and its jurors so as to cause an intentional prejudicial impact on the juror's decision and verdict and determination of guilt.

7.      Court's abuse of discretion by not proclaiming and initiating a doctrine of inherent incredibility and limit the perjured testimony being presented by the State's witnesses, while the Court was aware that the events were physically impossible in the description of the injuries inflicted upon the victim, and also allowed the prosecution to lead the perjured testimony while being aware that such was false, perjured and impossible as medical record clearly established.

8.      Prosecutorial misconduct and a denial of fundamental fairness by the State's knowing use of perjured testimony and offering such intentionally.

9.      Double jeopardy by conviction the Petitioner for both First Degree Murder and Burglary under a felony murder theory and in not presenting instructions that distinguish between First Degree Murder and Felony Murder.

(Id.) On September 22, 2016, Petitioner filed a *pro se* "Motion for Surrender of Case File and Discovery." (Document No. 24-27.) By Order entered on October 4, 2016, the Circuit Court appointed new counsel, entered a scheduling order, and granted in part Petitioner's "Motion for Surrender of Case File and Discovery." (Id.) On October 7, 2016, the Clerk of the Circuit Court

10

sent to Petitioner by certified mail a copy of Petitioner's "entire file including transcripts and habeas petition." (Id.) On October 26, 2016, the Circuit Court entered an Order directing the production of trial transcripts. (Id.) Petitioner's *habeas* proceeding are currently ongoing in the Circuit Court. (Id.)

**2.      Section 2254 Petition:**

On July 22, 2016, Petitioner, acting *pro se* and incarcerated at Northern Regional Jail, filed his "Application and Affidavit to Proceed Without Prepayment of Fees" (Document No. 1) and "Motion for Stay and Abeyance" (Document No. 2). In his "Motion for Stay and Abeyance," Petitioner requests that his Section 2254 Petition be stayed and held in abeyance. (Document No. 2.) Petitioner, however, did not filed a Section 2254 Petition with this Court. By Order entered on August 4, 2016, the undersigned noted that Petitioner had not filed a Section 2254 Petition with this Court and found his "Application and Affidavit to Proceed Without Prepayment of Fees" to be deficient because his form failed to include the Certificate portion to be completed by an authorized officer of the institution of incarceration. (Document No. 4.) The undersigned, therefore, directed Petitioner to (1) "either pay the $5.00 filing fee, or submit the appropriate Application to Proceed Without Prepayment of Fees or Costs with the Certificate portion completed and Authorization to Release Institutional Account Information," and (2) "file his Section 2254 Petition specifically setting forth his grounds for *habeas* relief." (Id.)

On August 19, 2016, Petitioner filed his Application to Proceed Without Prepayment of Fees and the instant Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody on August 19, 2016.[4] (Document Nos. 5 and 7.) In his Petition, Petitioner alleges

---

[4] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed

the following grounds for *habeas* relief:

1.    Ineffective assistance of counsel;

2.    State's knowing use of perjured testimony;

3.    Prosecutorial misconduct; and

4.    Trial court's abuse of discretion for failure to declare a doctrine of inherent incredibility while being aware of perjured testimony.

(Id., pp. 5 - 12.) As Exhibits, Petitioner attaches the following: (1) The testimony of John "Jack" Laishley (Document No. 7-2, pp. 4 – 11;); (2) A copy of "Rule 42.02 of the West Virginia Trial Court Rules (T.C.R.) (1999) (Presentation of Jury Instructions)" (Id., p. 12.); (3) A copy of an Exhibit entitled "Flash Never Explained the Law" (Id., pp. 13 – 15); (4) A copy of State v. Jenkins, 229 W.Va. 415, 729 S.E.2d 250 (2012) (Id., pp. 16 – 31.); (5) A copy of an Exhibit entitled "Pertinent Fact of Mental Health Issues" (Id., pp. 34 – 39.); (6) A copy of a letter from the West Virginia Supreme court dated August 5, 2016, regarding receipt of Petitioner's "Petition for Writ of Habeas Mandamus" (Id., p. 41.); (7) A copy of Petitioner's "Petition for Writ of Habeas Mandamus" and "Petition for Writ of Mandamus" as filed with the West Virginia Supreme Court (Id., pp. 42 – 48.); and (8) A copy of Petitioner's Affidavit (Id., pp. 50 – 57.).

By Order entered on April 6, 2016, the undersigned granted Petitioner's Application to Proceed Without Prepayment of Fees or Costs and directed Respondents to file a Response to Petitioner's Petition. (Document No. 8.) On November 30, 2016, Respondents filed their Answer, "Motion to Dismiss For Failure to Exhaust," and Memorandum in Support thereof with Exhibits. (Document Nos. 17 - 19.) Specifically, Respondents argue that "[d]ismissal without

---

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

prejudice, rather than a stay and abeyance of Petitioner's Federal proceedings, is warranted under these circumstances, because Petitioner's State *habeas* proceedings are in their infancy; because ADEPA is currently tolled by Petitioner's State filings; because Petitioner still enjoys the full effect of the one-year filing period required under ADEPA; and because Petitioner's State proceedings have routinely become overly litigious and lengthy, as evidence by Respondents' exhibits in this matter." (Document No. 18.)

As Exhibits, Respondents attach the following: (1) A copy of the Circuit Court's Docket Sheet for Case No. 12-F-232 (Document No. 18-1.); (2) A copy of Petitioner's Indictment (Document No. 18-2.); (3) A copy of the Circuit Court's Sentencing Order dated December 2, 2014 (Document No. 18-3.); (4) A copy of Petitioner's Notice of Appeal (Document No. 18-4.); (5) A copy of the West Virginia Supreme Court's Scheduling Order (Document No. 18-5.); (6) A copy of the Circuit Court's Docket Sheet for Case No. 15-C-580 (Document No. 18-6.); (7) A copy of Petitioner's first Petition for Writ of *Habeas Corpus* as filed in the Circuit Court of Cabell County (Document No. 18-7.); (8) A copy of Petitioner's Motion to Amend Petition as filed in Civil Action 15-C-580 (Document No. 18-8.); (9) A copy of the Circuit Court's Order dismissing Petitioner's *habeas* Petition in Civil Action 15-C-580 (Document No. 18-9.); (10) A copy of Petitioner's *pro se* Waiver of Direct Appeal (Document No. 18-10.); (11) A copy of the Circuit Court's Docket Sheet for Case No. 16-C-1 (Document No. 18-11.); (12) A copy of Petitioner's second Petition for Writ of *Habeas Corpus* as filed in the Circuit Court of Cabela County in Case No. 16-C-1 (Document No. 18-12.); (13) A copy of Petitioner's Motion to Withdraw Direct Appeal filed by counsel in the West Virginia Supreme Court (Document No. 18-13.); and (14) A copy of the West Virginia Supreme Court's Order granting the Motion to

13

Withdraw Direct Appeal (Document No. 18-14.).

On December 1, 2016, Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of his right to file a response to Respondents' Motion to Dismiss. (Document No. 20.) By Order entered on December 8, 2016, the undersigned directed Respondents to supplement the record with additional documents. (Document No. 21.) On December 16, 2016, Respondents filed the additional documents in compliance with the Court's Order. (Document No. 24.)

On December 23, 2016, Petitioner filed his Response in Opposition. (Document Nos. 25 and 25-1, pp. 1 - 2.) First, Petitioner argues that "a petitioner who has procedurally defaulted in State court must show both cause and prejudice."[5] (Document No. 25, p. 2.) Petitioner explains

---

[5] In his Response, Petitioner sets forth arguments concerning procedural defaulted *habeas* claims. The undersigned, however, notes that Petitioner's arguments are misplaced as his claims are not procedurally barred under state law. A claim that has not been presented to the state's highest court "may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000)(*citing Gray v. Netherland*, 518 U.S. 152, 161, 116 S.Ct. 2074, 2081, 135 l.Ed.2d 457 (1996)); *also see Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991)("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.") Although such claims are technically exhausted, the procedural default doctrine applies to those claims in a subsequent Section 2254 proceeding. *See Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000)("If claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts.") The procedural default doctrine prevents a federal court from hearing a claim that has been, or would be, disposed of on "adequate and independent state-law grounds, unless the petitioner can show cause and prejudice for, or a fundamental miscarriage of justice resulting from, failure to comply with the applicable rule." *See Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009). West Virginia Code § 53-4A-1(c) creates a rebuttable presumption that a state *habeas* petitioner knowingly and intelligently waives any claim that could have been, but was not, presented during the state *habeas* proceedings. Thus, the foregoing procedural bar "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal *habeas corpus* review of the default claim, unless the petitioner can demonstrate cause and prejudice of the default.'" *See Hayes v. Plumley*, 2016 WL 5662037, * 4 (S.D.W.Va. Sep. 30, 2016)(*citing*

14

that "cause is established by the delay and suspension of the Petitioner's rights to habeas corpus proceedings, and Petitioner was in fact delayed and denied appellate review by the court's failure to appoint counsel who would challenge the convictions." (Id.) Petitioner complains that all of the attorneys appointed to represent him "refused to present any grounds for relief other than ineffective assistance of counsel." (Id., pp. 2 – 3.) Petitioner alleges that appointed counsel stated that "any lawyer who wants to continue to work in Cabell County, W.Va. will not challenge either Judge Farrell or [Prosecutor] Chris Chiles." (Id., p. 3.) Petitioner explains that he is asserting an actual innocence claim, "which the Petitioner cannot establish due to the Circuit Court's denial of allowing the petitioner access to review the case file and discovery." (Id.) Second, Petitioner states that he was "forced into waiving a direct appeal due to appointed counsel's refusal to raise any grounds other than ineffective assistance of counsel." (Id.) Next, Petitioner asserts that "once he made all appointed counsel aware of the fraudulent billing practices discovered between John Laishley and Judge Farrell by the vouchers submitted and approved, and that the Petitioner intended to pursue a right of review regarding such, all appointed lawyers became hostile towards the Petitioner." (Id., p. 5.) Finally, Petitioner contends that Justice Ketchum improperly denied Petitioner's request to recuse Judge Farrell. (Id., pp. 5 –

---

*Coleman*, 501 U.S. at 732, 111 S.Ct. at 2555); *also see Green v. Ballard*, 2015 WL 1612198, * 5 (S.D.W.Va. April 10, 2015)(recognizing that W.Va. Code § 53-4A-1(c) is "an adequate and independent state ground" for purposes of procedural default). The Fourth Circuit has recognized that "procedural default is excusable under the cause and prejudice standard when the petitioner demonstrates (1) that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule, and (2) that errors at his trial . . . worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Wolfe v. Johnson*, 565 F.3d 140, 158, n. 27 (4th Cir. 2009)(internal citations omitted). In the instant case, Petitioner's claims are not procedurally defaulted as none of his claims have been presented to the State's highest court and it is not clear that the claims would be procedurally barred under state law if Petitioner attempted to present them to the state court. The record reveals Petitioner's State *habeas* proceedings are currently pending before the Circuit Court.

15

6.) Petitioner explains that "there exists the law firm of Greene, Ketchum, Bailey, Walker, Farrell and Tweel, and there are numerous cases wherein Justice Ketchum recused himself from cases involving Paul T. Farrell due to the affiliation of Judge Farrell's son." (Id.) Petitioner alleges that the foregoing establishes the State court's prejudice against Petitioner and a violation of his due process rights. (Id., pp. 6 – 7.) Therefore, Petitioner concludes that he "has suffered interference by state officials, specifically Judge Farrell and the lawyers he has appointed to the Petitioner, that caused delay and hindrances in challenging the constitutional violations presented in the Petitioner's 2254 Petition." (Id., p. 8.)

As Exhibits, Petitioner attaches the following: (1) A copy of Petitioner's Affidavit (Document No. 25-1, pp. 3 – 6.); (2) A copy of Petitioner's Petition for Writ of Mandamus and Exhibits as filed with the West Virginia Supreme Court on December 17, 2014 (Document No. 25-3.); (3) A copy of a letter from Glen Conway to the Office of Disciplinary Counsel dated December 31, 2014 (Document No. 25-4, p. 2.); (4) A copy of the Docket Sheet from Case No. 12-F- 232 (Id., pp. 3 – 7.); (5) A copy of the West Virginia Supreme Court's Order entered on August 11, 2015, granting Timothy P. Rosinsky's Motion to Withdraw as Counsel (Id., pp. 9 - 10.); (6) A copy of Petitioner's "Motion to Prohibit Filing Without Consultation" filed on August 12, 2015 (Id., pp. 11 – 18.); (7) A copy of Petitioner's "Motion Requesting Status of Counsel and Appeal" as filed on July 24, 2015 (Id., pp. 19 – 22.); (8) A copy of a letter addressed to Petitioner from Timothy P. Rosinsky stating that the West Virginia Supreme Court had granted his motion to withdraw as counsel (Id., p. 22.); (9) A copy of a letter from Petitioner addressed to Judge Farrell filed on November 24, 2015 (Id., pp. 23 – 24.); (10) A copy of a letter from Petitioner to Attorney Wright dated November 17, 2015, requesting that "nothing be filed

16

until I have had the opportunity to actually consult with you as to all of the possible ramifications of what is being filed" (Id., p. 25.); (11) A copy of Petitioner's first State *habeas* petition as filed on August 14, 2015, in Case No. 15-C-580 (Document No. 25-5.); (12) A copy of Petitioner's "Petition for Writ of Habeas Mandamus" as filed with the West Virginia Supreme Court (Document No. 25-6.); (13) A copy of Petitioner's "Petition for Writ of Prohibition" as filed with the West Virginia Supreme Court on March 28, 2016 (Document No. 25-7.); (14) A copy of Petitioner's "Motion for Disqualification" of Justice Menis Ketchum as filed with the West Virginia Supreme Court on March 28, 2016 (Document No. 25-8.) ; (15) A copy of Petitioner's "Motion for the Surrender of Case File and Discovery" as filed with the Circuit Court on September 22, 2016 (Document No. 25-9.); (16) A copy of documents concerning Petitioner's "Petition for Qui Tam False Claims Action" (Document No. 25-10.); (17) A copy of Petitioner's "Freedom of Information and Privacy Act Requests" (Document Nos. 25-11 and 25-12.); and (18) A copy of the "West Virginia Public Defender Services Statement of Fees and Expenses Time Period 1/1/12011 through 12/31/2011 (Document No. 25-13.).

## THE APPLICABLE STANDARD

In Section 2254 proceedings, the familiar standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to motions to dismiss. See Walker v. True, 399 F.3d 315, 319, n. 1. (4th Cir. 2005); also see Rules Governing Section 2254 Cases in the United States District Courts, Rule 12 (The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with the *habeas* rules, may be applied to Section 2254 proceedings). A motion to dismiss a Section 2254 petition under Rule 12(b)(6) "tests the legal sufficiency of the petition, requiring the federal habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true." Walker v. Kelly, ,

139 (4ᵗʰ Cir. 2009)(citing Wolfe v. Johnson, 565 F.3d 140, 169 (4ᵗʰ Cir. 2009). The court, however, is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" Massey v. Ojaniit, 759 F.3d 343, 353 (4ᵗʰ Cir. 2014)(quoting Blankenship v. Manchin, 471 F.3d 523, 529 (4ᵗʰ Cir. 2006). When assessing whether the Section 2254 petition states a claim for relief, the court must consider "the face of the petition any attached exhibits." Wolfe, 565 F.3d at 169 (internal quotations omitted). The court may also consider such exhibits and matters of public record, such as documents from prior state court proceedings, in conjunction with a Rule 12(b)(6) motion without having to convert the motion to one for summary judgment. Walker, 589 F.3d at 139.

## ANALYSIS

1.   **Failure to Exhaust:**

In the Motion to Dismiss, Respondents argue that Petitioner's Petition should be dismissed for failure to exhaust. (Document No. 18.) In Response, Petitioner appears to acknowledge that his claims are unexhausted. (Document Nos. 25 and 25-1.) Petitioner, however, appears to contend that he should be excused from exhaustion due to delays in his State court proceedings. (Id.)

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA], effective April 24, 1996, provides that state prisoners must exhaust available state remedies prior to filing a § 2254 petition in federal court. 28 U.S.C. § 2254(b)(1)(A); see also, McDaniel v. Holland, 631 F.Supp. 1544, 1545 (S.D. W.Va. 1986)("A federal court will not entertain a state prisoner's petition for a writ of habeas corpus unless the

18

prisoner has first exhausted available state judicial remedies."). Section 2254(b)(1)'s exhaustion requirement can be satisfied in either one of two ways: (1) the Petitioner can fairly present all claims in state court, or (2) the Petitioner's claims will be deemed exhausted if no state remedies are currently available. See Gray v. Netherland, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996). Fair presentation requires the Petitioner to (1) present the same claims (2) to all appropriate state courts. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds*, United States v. Barnette, 644 F.3d 192 (4th Cir. 2011). Presentation of the same claim "contemplates that 'both the operative facts and the 'controlling legal principles' 'must be presented to the state court." Id. (quoting Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). Although it is unnecessary to cite "book and verse on the federal constitution," "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." See Picard, 404 U.S. at 278, 92 S.Ct. at 514; Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)(internal citations omitted); Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000). The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Matthews, supra, 105 at 911. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 886, 130 L.Ed.2d 865 (1995); see also Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004)(stating that "[a] litigant

wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'"). Petitioner must also provide the state court with the facts supporting the claimed constitutional violation and "explain how those alleged events establish a violation of his constitutional rights." <u>Mallory v. Smith</u>, 27 F.3d 991, 994 (4th Cir. 1994). The requirement of presentation of the same claim to all appropriate state courts is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). This requirement is satisfied by presentation to the state's highest court on either direct or collateral review. <u>Id.</u> at 844, 119 S.Ct. at 1732. In West Virginia, prisoners may exhaust their available State court remedies by the following: (1) stating cognizable federal constitutional claims in a direct appeal to the West Virginia Supreme Court of Appeals; (2) stating cognizable federal constitutional claims in a petition for a writ of *habeas corpus* in a State circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the West Virginia Supreme Court of Appeals; or (3) filing a petition for writ of *habeas* corpus under the West Virginia Supreme Court's original jurisdiction and receiving a dismissal with prejudice.[6] <u>Moore v. Kirby</u>, 879 F.Supp. 592, 593 (S.D.W.Va. 1995); <u>McDaniel v. Holland</u>, 631 F.Supp. 1544, 1545-46 (S.D.W.Va. 1986).

---

[6]  An original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the petitioner's state court remedies. *See Moore*, 879 F.Supp. at 593; *McDaniel*, 631 F.Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-09 (4th Cir. 1990)(*abrogated on other grounds, Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997)).

Generally, a federal district court may not review a Section 2254 petition unless there has been "total exhaustion" of the presented issues. Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); also see Preiser v. Rodriguez, 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)(When a petitioner fails to exhaust his state court remedies, a federal *habeas* petition should be dismissed.) When a petitioner presents a mixed petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted, the District Court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in State Court; or (3) allow the petitioner to remove the unexhausted claim claims and proceed with the exhausted claims. Rhines v. Weber, 544 U.S. 269, 275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005). "[N]otwithstanding the failure of an applicant to exhaust the remedies available in the courts of the state," a district court may deny the unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2); also see White v. Keller, 2013 WL 791008, * 5 (M.D.N.C. March 4, 2013). To be excused from the exhaustion requirement, Petitioner must establish that "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The foregoing statutory exceptions apply "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). "State remedies may be rendered ineffective by inordinate delay or inaction in state proceedings." Ward v. Freeman, 46 F.3d 1129 (4th Cir. 1995)(unpublished table decision); Farmer v. Circuit Court of Md. for Balt. City., 31 F.3d 219, 223 (4th Cir. 1994)("There is . . . authority for treating sufficiently diligent, though unavailing, efforts to exhaust as, effectively, exhaustion, and for excusing efforts sufficiently shown to be futile in the face of state dilatoriness or recalcitrance.").

21

Courts within the Fourth Circuit have indicated that the "inordinate delay" must be attributable to the state's procedures that infringe on the petitioner's due process right, and not attributable to the petitioner's own actions. See Walkup, 2005 WL 2428163 at 3; also see Tinsley v. Warden, 2016 WL 1625243 (D.S.C. April 21, 2016). The relevant inquiry is whether the delay amounts to a violation of the petitioner's right to due process. See United States v. Brown, 292 Fed.Appx. 250, 252 (4th Cir. 2008)(citing United States v. Johnson, 732 F.2d 379, 381 (4th Cir. 1984)); also see Gary v. Bodison, 2010 WL 2195464 (D.S.C. June 1, 2010)(citing Barry v. Sigler, 373 F.2d 835, 838 n. 4 (8th Cir. 1967)(Federal intervention on the merits is generally warranted only in cases where a delay in state court proceedings amounts to a denial of a petitioner's due process right.) To determine whether a delay amounts to a due process violation, the Fourth Circuit has adopted the four-factor speedy trial analysis as announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See United States v. Johnson, 732 F.2d 379, 381 (4th Cir. 1984), cert. denied, 469 U.S. 1033, 105 S.Ct. 505, 83 L.Ed.2d 396 (1984). The four-factors are as follows: (1) the length of delay; (2) the reason for the delay, (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Id. No one factor is dispositive; all factors are to be considered together in light of the particular circumstances of the case. Barker v. Wingo, 407 U.S. at 533, 92 S.Ct. at 2194.

First, the undersigned will consider the first Barker factor concerning the length of delay. The record reveals that Petitioner has had post-conviction proceedings pending before the State courts since December 2014. Specifically, Petitioner's State proceedings have included a direct appeal and two State *habeas* petitions. First, Petitioner's direct appeal was pending before the West Virginia Supreme Court for approximately 14 months (December 8, 2014 – February 16, 2016). Second, Petitioner's first State *habeas* petition was pending before the Circuit Court for

22

approximately 4 months (August 14, 2015 – December 4, 2015). Third, Petitioner's *second* State *habeas* petition has been pending before the Circuit Court for approximately 12 months (January 4, 2016 - present). Generally, courts find an inordinate delay only when long periods of time have passed. See Brennan v. McGraw, 2012 WL 3656487 (S.D.W.Va. Aug. 24, 2012)(J. Goodwin)(citations omitted)("[D]elay only rises to the level of 'inordinate' in extreme cases."); also see Turner v. Bagley, 401 F.3d 718, 726-27 (6th Cir. 2004)(excusing exhaustion where the petitioner's state direct appeal had been pending for 11 years); Lee v. Stickman, 357 F.3d 338, 341-42 (3rd Cir. 2004)(holding that an 8-year delay in reaching the merits of a post-conviction petition constitute inordinate delay); Mathis v. Hood, 851 F.2d 612, 614 (2nd Cir. 1988)(finding a 6-year delay of direct appeal constitutes inordinate delay); Johnson, supra, 732 F.2d at 382(finding that a 2-year delay in the preparation of transcripts was "in the range of magnitude of delay as a result of which courts have indicated that due process may have been denied"); Gardner v. Plumley, 2013 WL 5999041 (S.D.W.Va. Nov. 12, 2013)(J. Goodwin)(finding inordinate delay where petitioner's state proceedings were pending for nearly 20 years without a decision from the state court); but also see Miller v. McFadden, 2015 WL 846530 (D.S.C. Feb. 26, 2015)(finding no inordinate delay where the time between when the petition was filed and when the Circuit Court issued its Order of Dismissal was approximately 24 months); Cobarruvias v. Cartledge, 2012 WL 6772231, * 2 (D.S.C. Nov. 2012)(finding that 22 months does not qualify as inordinate delay); Short v. Hoke, 2010 WL 2509633 (S.D.W.Va. June 18, 2010)(J. Faber)(finding no inordinate delay based upon petitioner's State petition pending in the circuit court for little more than a year); Walkup v. Haines, 2005 WL 2428163 (S.D.W.Va. Sept. 30, 2005)(J. Faber)(finding a 3 year delay not to be inordinate delay); Gilchrist v. Hagan, 2005 WL 3747428 (D.S.C. March 11, 2005)(finding that "a 16 month wait is not excessive and thus

weighs in favor of a finding that there has been no due process violation"). Thus, the undersigned finds that the delays in Petitioner's State proceedings are not the magnitude of delay that has been determined to be inordinate or a violation of due process.[7]

Next, the undersigned will consider the second <u>Barker</u> factor concerning the reason of delay. The undersigned will first consider Petitioner's direct appeal. Although Petitioner's direct appeal was pending for approximately 14 months, the record reveals that at least part of this delay was attributable to Petitioner. After the filing of the Notice of Appeal, Petitioner was appointed three new attorneys. The appointment of these attorneys appear to be, at least in part, attributable to Petitioner's continued disagreement with counsel. It is reasonable that some delay would occur as a result of the appointment of new counsel. Each replacement attorney would need time to obtain and review the file and become familiar with the facts and applicable law. Petitioner caused further delay by filing several *pro se* documents requesting that the State courts prohibit any filings by counsel without Petitioner's express approval. The record reveals that in July, 2015, Attorney Rosinsky had "completed 95% of the Brief" but Petitioner forbade him from filing anything in his case, which prevented counsel from perfecting Petitioner's appeal. Additionally, Petitioner "verbally forbade counsel (Attorney Wright) from filing a direct appeal"

---

[7] To the extent Petitioner is alleging delay concerning the Circuit Court's entry of the final sentencing order, the undersigned finds that the delay was not of the magnitude of delay that has been determined to be a violation of due process. The record reveals that the Circuit Court denied Petitioner's Motion to Set Aside Verdict and Motion for New Trial on February 19, 2014, and the final sentencing order was entered less than 10 months later (December 2, 2014). Although there was delay in the entering of the final sentencing order, a delay of less than 10 months is not of the magnitude of delay that has been determined to be a violation of due process. *See Johnson*, 732 F.2d at 382; *also see Rheurark v. Shaw*, 628 F.2d 297 (5th Cir. 1980), *cert. denied*, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981)(finding a two year delay in preparing transcripts for appeal violates due process); *Suggs v. United States*, 2010 WL 2720716, * 2 (N.D.W.Va. July 8, 2010)(finding a period of 10 months was insufficient to trigger the *Barker* balancing test).

during a client conference in November, 2015. Although Petitioner was represented by counsel, Petitioner filed two *pro se* State *habeas* petitions initiating two separate *habeas* proceedings in the Circuit Court while his direct appeal was pending before the West Virginia Supreme Court. Petitioner also filed a *pro se* Motion to Waive Direct Appeal, which required additional work and consultation from appointed counsel to ensure that Petitioner understood his rights and the consequence of his requested action.[8] Accordingly, the record supports a finding that a significant portion of the delay of Petitioner's direct appeal was attributable to Petitioner's actions. See Gardner v. Plumley, 2013 WL 5999041, * 6 (S.D.W.Va. Nov. 12, 2013)(J. Goodwin)(citations omitted)("The rule excusing exhaustion in cases of inordinate delay is not limited to delays caused by judge, court officials, and prosecutors; it also has been applied to delays caused by court-appointed counsel, which may be 'attributable to the state' as long as 'the petitioner has not personally caused the delays nor condoned them.'")

Next, the undersigned will consider the reason for delay in Petitioner's State *habeas* proceedings. Concerning Petitioner's first State *habeas* petition, the undersigned notes that there was no evidence of delay. Petitioner's first State *habeas* petition was resolved in approximately 4 months (August 14, 2015 – December 4, 2015). Concerning Petitioner's second State *habeas*

---

[8] Although Petitioner now argues that he was denied appellate review due to the court's failure to appoint counsel who would challenge the convictions, the record does not support such a finding. In the "Motion for Withdraw of Direct Appeal" filed by counsel, Attorney Wright explained that "Petitioner has remained steadfast in this decision and clear directives to counsel, not to proceed with the direct appeal and pursue his petition for writ of habeas corpus subjiciendum on the grounds of ineffective assistance of counsel in the Cabell County Circuit Court." (Document No. 18-13, p. 5.) In a signed statement dated December 7, 2015, Petitioner stated as follows: "I, Edward Jesse Dreyfuse, hereby direct my Counsel, Steven M. Wright, to file appropriate pleadings to dismiss my current appeal in the West Virginia Supreme Court of Appeals, Case No. 14-1251. Counsel has advised me of my rights to an Appeal and subsequent Habeas Corpus proceedings, however, I feel it is in my best interests to proceed at the Circuit Court level. I make this decision freely and voluntarily, and against the advice of my Counsel." (Document No. 24-30.)

petition, the undersigned notes that such has been pending with the Circuit Court for approximately 12 months (January 4, 2016 – present). The undersigned notes that although Petitioner was represented by counsel, Petitioner filed his second *pro se* State *habeas* petition while his direct appeal was still pending before the West Virginia Supreme Court. This act accounts for more than a month of delay in the second State *habeas* proceeding. A review of the State court records further reveals that Petitioner has caused further delay by continuing to file with the West Virginia Supreme Court *pro se* motions to disqualify Circuit Court Judge Paul Farrell[9] and West Virginia Supreme Court Chief Justice Menis Ketchum. Despite the denial of the motions to disqualify, Petitioner persists in filing continuous motions asserting the same arguments previously rejected by the State courts.[10] Petitioner recently initiation a civil action in this Court involving Judge Farrell and subsequently filed a *pro se* Petition for Writ of Mandamus with the West Virginia Supreme Court complaining of the following: (1) Petitioner's State *habeas* proceedings had been "suspended and under a stay due to pending Civil Actions in the United States District Court, Southern District, where Petitioner has proceeded against Judge Paul T. Farrell;" and (2) Petitioner's State *habeas* proceedings had been delayed "by Judge

---

[9]  Petitioner initiated another civil action with this court on June 10, 2016. (Civil Action No. 3:16-cv-05273)

[10]  In Petitioner's Response filed with this Court, Petitioner continues to argue that Justice Ketchum improperly denied Petitioner's request to recuse Judge Farrell. (Document No. 25, pp. 5 – 6.) Petitioner explains that "there exists the law firm of Greene, Ketchum, Bailey, Walker, Farrell and Tweel, and there are numerous cases wherein Justice Ketchum recused himself from cases involving Paul T. Farrell due to the affiliation of Judge Farrell's son." (*Id.*) The record clearly reveals that this issue was addressed by an Administrative Order entered on March 31, 2016. (Document No. 24-20.) Specifically, the Administrative Order explains that Petitioner seeks the removal of Justice Ketchum because "he recused himself in previous cases involving Lawyer Paul T. Farrell." (*Id.*) The Administrative Order clearly states that "[t]he above styled case involves Judge Paul T. Farrell, a different person than Lawyer Paul T. Ferrell who is a member of Chief Justice's former law firm. Chief Justice Ketchum has no relationship with

26

Farrell's not recusing himself" based on the federal proceedings. The record further reveals that Petitioner has on at least two occasions requested a stay of his State *habeas* proceedings. Petitioner's above filings have clearly caused delay in the State *habeas* proceedings that are attributed to Petitioner. Petitioner's continuous *pro se* filings, that were presumably made without the advice of counsel, caused further delay because Attorney Wright was required to reconcile the *pro se* documents with the overall case strategy. Irreconcilable differences between Petitioner and Attorney Wright resulted in counsel filing a motion to withdraw, which was recently granted by the Circuit Court. Since granting Attorney Wright's motion to withdraw as counsel, the Circuit Court has on two separate occasions appointed attorneys to represent Petitioner in his State *habeas* proceedings (August 1, 2016 and October 4, 2016). This has caused further delay in the *habeas* proceedings. Petitioner's repetitive filings with the West Virginia Supreme Court, in combination with his continued dissatisfied with appointed counsel, clearly has resulted in delays that are in-part attributable to Petitioner. See Matthews, supra, 51 F.3d at 267(noting that nearly a 4-year delay was not inordinate because some of the delay was attributable to the petitioner); Walkup, 2005 WL 2428163 at 3(stating that the length of delay "is not a determinative factor when some of the delay is attributable to petitioner."). Accordingly, the record supports a finding that a significant portion of the delay of proceedings concerning Petitioner's second State *habeas* petition is attributable to Petitioner's actions.

Considering the remaining Barker factors, the undersigned finds that the instant case does not rise to the level of a due process violation. Although Petitioner has diligently asserted his rights, there is no indication that any delay in the State court proceedings have prejudiced his position. There is no indication or allegation that any delay has caused any loss of evidence

Judge Paul T. Farrell." (*Id.*)

necessary to support Petitioner's *habeas* claims. A review of the docket sheet reveals that reasonable activity has occurred in Petitioner's current *habeas* proceedings. Specifically, the docket sheet reveals that an amended *habeas* petition has been filed, a scheduling order entered, three separate attorneys appointed to represent Petitioner, the "entire file including transcripts" were mailed to Petitioner, and the trial transcripts have been ordered to be produced. Clearly, Petitioner's State *habeas* proceeding is not dormant or languishing in the Circuit Court. Further, there is no indication that the State is intentionally hindering a timely resolution of the *habeas* petition. Finally, the record reveals that Petitioner has had at least six attorneys appointed to represent him in his State court proceedings since his underlying conviction, which evidences the State's efforts to protect Plaintiff's due process rights. Based upon the foregoing, the undersigned finds that Petitioner has failed to exhaust his state remedies and has not raised sufficient grounds to justify excusing the exhaustion requirement. The undersigned, therefore, will consider whether a stay should be granted.

**2.     Motion for Stay and Abeyance:**

In his "Motion for Stay and Abeyance," Petitioner requests that the Court stay the current proceedings and allow Petitioner to return to State court to fully exhaust his claims. (Document No. 2.) Petitioner contends that his "reasonable confusion about whether the state filings being timely may constitute 'good cause' for him to file in federal court and seek a stay, and the confusion as to the 'time tolling' against the AEDPA's 1-year statute." (Id., p. 3.) Petitioner, therefore, requests that this Court grant his motion "to preserve his right to seek relief by means of a Petition for Writ of Habeas Corpus in the United States District Courts." (Id.)

In Response, Respondents argue that Petitioner's Motion for Stay and Abeyance should be denied. (Document No. 18, p. 2.) Specifically, Respondents argue that "[d]ismissal without

prejudice, rather than a stay and abeyance of Petitioner's Federal proceedings, is warranted under these circumstance because Petitioner's State *habeas* proceedings are in their infancy; because AEDPA is currently tolled by Petitioner's State filings; because Petitioner still enjoys the full effect of the one-year filing period required under AEDPA; and because Petitioner's State proceedings have routinely become overly litigious and lengthy, as evidenced by Respondents' exhibits in this matter." (Id.) Respondents acknowledge that Petitioner would be able to file for Federal relief upon the conclusion of his State proceedings. (Id.)

In Rhines, the Supreme Court determined that when a State prisoner presents a mixed petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted, the district Court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in State Court; or (3) allow the petitioner to remove the unexhausted claim claims and proceed with the exhausted claims. Rhines v. Weber, 544 U.S. 269, 275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005). The Supreme Court, however, cautioned that a "[s]tay and abeyance, if employed too frequently, has the potential to undermine" the twin purposes of the total exhaustion requirement and the limitation period. Id., 544 U.S. at 277, 125 S.Ct. at 1534. Specifically, the Supreme Court explained as follows:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.

Id., 544 U.S. at 277, 125 S.Ct. at 1535. Thus, a "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id. (noting that "if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling

his petition in federal court before the limitations period runs are slim."); also see Demere v. Ballard, 2013 WL 5352950 (N.D.W.Va. Sept. 24, 2013)("this procedure is only appropriate where an outright dismissal could jeopardize the timeliness of a petitioner's collateral attack in federal court").

First, the undersigned notes that Petitioner has failed to exhaust his State court remedies for *all* of his claims. Thus, the undersigned will consider whether the Rhines rationale applies to an *unmixed* petition. The United States Supreme Court has not specifically addressed this issue. The Third, Fourth, Seventh, Ninth, and Tenth Circuits, however, have interpreted that Pace v. Guglielmo, 544 U.S. 408, 416, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) extended the Rhines rationale beyond mixed petitions. See Mena v. Long, 813 F.3d 907 (9th Cir. 2016)(holding that the "*Rhines* stay-and-abeyance procedure is not limited to mixed petitions, and a district court may stay a petition that raises *only* unexhausted claims"); Hyman v. Keller, 2011 WL 3489092 * 10 (4th Cir. 2011)(finding that in *Pace*, the Supreme Court "extended the *Rhines* rational beyond mixed § 2254 petitions"); Heleva v. Brooks, 581 F.3d 187, 191-92 (3rd Cir. 2009)(finding that "*Pace* seems to open the door to utilizing the stay and abeyance procedure in at least some limited circumstances beyond the presentation of a mixed petition"); Dolis v. Chambers, 454 F.3d 721, 724-25 (7th Cir. 2006)(remanding for consideration of a possible stay and abeyance even though the petition contained only unexhausted claims); Doe v. Jones, 2014 WL 3906849, * 7 (10th Cir. Aug. 12, 2014)(finding that the district court had discretion to consider a Rhines stay in an unmixed petition when petitioner had two days remaining of the federal limitations period). In Pace, the Supreme Court held that a petitioner was not entitled to equitable tolling of the statute of limitations while his untimely state petition was pending in state court. The

30

Supreme Court suggested that "[a] prisoner seeking state postconviction relief might avoid this predicament, however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." Pace, 544 U.S. at 416, 125 S.Ct. at 1807. It is important to note that the *habeas* petition in Pace was an unmixed petition, and the Supreme Court gave no indication that the foregoing statement applied to only mixed petitions. Furthermore, it is very unlikely the Supreme Court would have suggested the above action in Pace if such an action would have been unavailable to Mr. Pace due to his *habeas* petition being unmixed. Based on the forgoing, the undersigned finds that the Rhines standard applies to unmixed petitions.

Applying the Rhines standard to the facts of the instant case, the undersigned finds that a stay and abeyance is not warranted. Although Petitioner indicates that he is filing a "protective" Section 2254 due to timeliness concerns, the undersigned finds that the record does not support such a concern. Section 2244(d)(1)(A) provides that a Section 2254 *habeas* petition must be filed within one year after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[11]

---

[11] Title 28, United States Code, Section 2244(d)(1) provides as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

Although Petitioner, by counsel, filed his Notice of Appeal on December 8, 2014, his appeal was never perfected.[12] (Document Nos. 18-4 and 18-6.) An Amended Scheduling Order was filed in the West Virginia Supreme Court on November 19, 2015. (Document No. 24-11.) The Circuit Court resentenced Petitioner on December 1, 2015, for the purpose of reinstating his appeal rights. (Document No. 18-9.) Respondents acknowledge that Petitioner's resentencing "resets the time frame in which Petitioner's conviction was rendered 'final' under [AEDPA]." (Document No. 19, p. 3.); also see Harper v. Ballard, 2013 WL 285412, *4 - 6 (S.D.W.Va. Jan. 24, 2013)(J. Chambers)(finding Petitioner's resentencing restarted the clock for purposes of AEDPA's one-year limitation period); Horn v. Ballard, 2009 WL 914879, * 2 (S.D.W.Va. March 31, 2009)(J. Faber)(finding that petitioner's Section 2254 petition was timely based upon the reinstatement of petitioner's direct appeal rights by means of resentencing). Since Petitioner's direct appeal was still pending with the West Virginia Supreme Court, the limitation period remained tolled after his resentencing by the Circuit Court on December 1, 2015. On January 4, 2016, Petitioner, acting *pro se*, filed his second Petition for Writ of *Habeas Corpus* in the Circuit

---

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

[12] Although Petitioner filed a "Notice of Intent to Appeal" on December 8, 2014, Petitioner did not perfect his appeal by filing his Appellate Brief. Rule 37(b)(3) of the West Virginia Rules of Criminal Procedure provides that "[a]n appeal must be perfected within four months of the entry of the circuit court order in accordance with Rule 5 of the Rules of Appellate Procedure. The appeal period may be extended in accordance with the Rules of Appellate Procedure." W. Va. R. Crim. P. 37 (2010).

Court of Cabell County (Case No. 16-C-1). (Document Nos. 18-11 and 18-12.) By Order entered on February 16, 2016, the West Virginia Supreme Court granted Petitioner's "Motion for Withdraw of Direct Appeal." (Document No. 18-14.) Although Petitioner's direct appeal was dismissed on February 16, 2016, the limitation period remained tolled due to Petitioner's pending State *habeas* petition (Case No. 16-C-1). The Court notes that Petitioner's second State *habeas* petition is currently pending before the Circuit Court. Thus, the one-year statute of limitation is currently tolled by Petitioner's State *habeas* proceedings. Considering the procedural history of Petitioner's State court proceedings, the undersigned notes that Petitioner has evaded any expiration of time under the limitation period. Upon the conclusion of Petitioner's State *habeas* proceedings, Petitioner will have the full one-year period in which to file a Section 2254 Petition in federal court. Accordingly, the undersigned finds that dismissal will not jeopardize the timeliness of Petitioner's Section 2254 Petition, and he cannot at this time demonstrate good cause for his failure to present his claims to the State Courts prior to seeking federal *habeas* relief. Accordingly, undersigned recommends that Respondents' "Motion to Dismiss for Failure to Exhaust" (Document No. 18) be granted, Petitioner's "Motion for Stay and Abeyance" (Document No. 2) be denied, and Petitioner's Petition must be dismissed without prejudice.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Petitioner's "Motion for Stay and Abeyance" (Document No. 2), **GRANT** Respondents' "Motion to Dismiss for Failure to Exhaust" (Document No. 18), **DISMISS** without prejudice

Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document No. 7), and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same Petitioner, who is acting *pro se*, and to counsel of record.

Dated: January 6, 2017.

Omar J. Aboulhosn
United States Magistrate Judge

34